# THE UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| STRATASYS INC.,<br><br>Plaintiff,<br><br>v.<br><br>MICROBOARDS TECHNOLOGY, LLC d/b/a AFINIA,<br><br>Defendant. | Case No.: 13-CV-03228 (DWF/JJG)<br><br>**DEFENDANT MICROBOARDS TECHNOLOGY, LLC d/b/a AFINIA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS OF INEQUITABLE CONDUCT AND STRIKE AFFIRMATIVE DEFENSES OF PATENT MISUSE** |

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................... 1

II.   TECHNOLOGY TUTORIAL ................................................... 2

III.  ARGUMENT ........................................................................... 4

    A.   Afinia Has Sufficiently Pled A Claim Of Inequitable Conduct..... 3

        1.   Afinia Has Satisfied the *Exergen* Standard for
Pleading Inequitable Conduct ................................................. 6

            a.  Who – Stratasys, Steven Crump, and John
Batchelder Committed Inequitable Conduct ..................... 9

            b.  What, When, and Where – Stratasys and the
Inventors had a Duty to Submit the Material
Information in the '329 Patent and the FDM(R)
1650 to the USPTO......................................................... 10

            c.  How – "But For" Stratasys and the Inventor's
Failure to Disclose the '329 Patent and FDM(R)
1650, the '925 and'058 Patents Would Not Have
Been Granted ................................................................. 11

        2.   Afinia Has Pled that Stratasys Intended to Deceive the
USPTO ................................................................................ 13

        3.   The Facts Pled Support a Claim of Inequitable Conduct
and the Affirmative Defense of Patent Misuse ..................... 15

            a.  The '925 Patent.............................................................. 15

            b.  The '058 Patent.............................................................. 18

            c.  The '124 Patent and the '239 Patent............................... 22

# TABLE OF CONTENTS

## (Continued)

     d.  Additional Facts Relevant to the '058 Patent Claim of Inequitable Conduct ...................................................... 23

     e.  Additional Facts Relevant to the '925 Patent Claim of Inequitable Conduct ...................................................... 28

     f.  Afinia Has Properly Pled the Affirmative Defense of Patent Misuse ............................................................. 28

        1.  The Facts Support a Finding that Stratasys Enforces Patents it Knows were Fraudulently Obtained ................................................................. 29

        2.  Stratasys' Motion to Strike Affirmative Defenses Should Be Denied .................................... 31

IV.    CONCLUSION ....................................................................... 38

## TABLE OF AUTHORITIES
### CASES

*Apple, Inc. v. Motorola Mobility Inc.*,
No. 11-cv-178-bbc, 2011 WL 7324582 (W.D. Wis. June 7, 2011) ................... 36-37

*Ash Grove Cement Co. v. MMR Constructors, Inc.*,
4:10-CV-04069, 2011 WL 3811445 (W.D. Ark. Aug. 29, 2011) ...................... 32, 33

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ............................................................... 32

*Atlanta Pharma AG v. Teva Pharmaceuticals USA, Inc.*,
Civil Action No. 04-2355(JLL), 2012 WL 2068611 (D.N.J. June 7, 2012) ............ 37

*Aventis Pharma S.A. v. Hospira, Inc.*,
675 F.3d 1324 (Fed. Cir. 2012) ...................................................... 8

*Bell Atlantic Corporation v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955 (2007) ............................................... 32

*BJC Health Sys. v. Colombia Cas. Co.*,
478 F.3d 908 (8th Cir. 2007) ....................................................... 31

*Cumberland Pharm., Inc. v. Mylan Institutional LLC*,
12 C 3846, 2012 WL 6567922 (N.D. Ill. Dec. 14, 2012) ............................. 15

*Cutsforth, Inc. v. LEMM Liquidating Co., LLC*,
12-CV-1200, 2013 WL 2455979 (D. Minn. June 6, 2013) ............................... 6

*Delano Farms Co. v. California Table Grape Comm'n*,
655 F.3d 1337 (Fed. Cir. 2011) ................................................... 5-6

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ...................................... 5, 6, 9, 10, 11, 13

*Lakeside Roofing Co. v. Nixon*,
No. 4:10CV01761, 2011 WL 2600421 (E.D. Mo. June 29, 2011) ........................ 32

*Lunsford v. U.S.*,
570 F.2d 221 (8th Cir. 1977) ...................................................... 32

# CASES

## (Continued)

*Morton v. Becker*,
   793 F.2d 185 (8th Cir. 1986) ...................................................................... 5

*Multimedia Patent Trust v. Apple, Inc.*,
   No. 10-CV-2618, 2012 WL 6863471 (S.D. Cal. Nov. 9, 2012) ............................ 37

*Openmethods, LLC v. Mediu, LLC*,
   No. 10-761-CV-W-FJG, 2011 U.S. Dist. Lexis 60980 (W.D. Mo. June 8, 2011) .... 32

*Perez v. Gordon & Wong Law Group, P.C.*,
   No. 11-CV-03323-LHK, 2012 WL 1029425 (N.D. Cal. Mar. 26, 2012) ................ 32

*Pollin Patent Licensing, LLC v. Capital One Auto Fin., Inc.*,
   No. 10 CV 07420, 2011 WL 5118891 (N.D.Ill. Oct. 25, 2011) ............................ 15

*Princo Corp. v. Int'l Trade Comm'n*,
   616 F.3d 1318 (Fed. Cir. 2010) ........................................................... 34, 36

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997) ............................................................... 10

*Stanbury Law Firm, P.A. v. I.R.S.*,
   221 F.3d 1059 (8th Cir. 2000) .................................................................. 31

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed.Cir. 2011) ......................................................... 5, 6, 8

*Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*,
   411 F.3d 1369 (Fed. Cir. 2005) ............................................................... 33

*VG Innovations, Inc. v. Minsurg Corp.*,
   No. 8:10-cv-1726-T-33MAP, 2011 WL 1466181 (M.D. Fla. April 18, 2011) ........ 37

*W.L. Gore & Associates, Inc. v. Medtronic, Inc.*,
   850 F. Supp. 2d 630 (E.D. Va. 2012) ................................................... 8, 15

# CASES

## (Continued)

Wells Fargo & Co. v. United States,
   750 F.Supp.2d 1049 (D.Minn.2010) ................................................................ 32-33

*Westcott v. Omaha*,
   901 F.2d 1486 (8th Cir. 1990) ...................................................................................4

*Whitserve v. GoDaddy.com, Inc.*,
   No. 11-cv-948, 2011 U.S. Dist. LEXIS 132636 (D. Conn. Nov. 17, 2011) .............33

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
   782 F.2d 995 (Fed.Cir.1986) ....................................................................................36

# Rules

Fed. R. Civ. P. Rule 8(a)(2) .............................................................................................33

Fed. R. Civ P. Rule 8(b)(1)(A) .........................................................................................32

Fed. R. Civ. P. Rule 8(b) .................................................................................................32

Fed. R. Civ. P. Rule 8(c)..............................................................................................33, 37

Fed. R. Civ. P. Rule 8(c)(1).............................................................................................32

Fed. R. Civ. P. Rule 9(b) .............................................................................................5, 37

Fed. R. Civ. P. Rule 12(b)(6)........................................................................................1, 4

Fed. R. Civ. P. Rule 12(f) .......................................................................................1, 31, 37

# Regulations

37 CFR 1.56.............................................................................................................6, 10

Defendant/Counterclaimant, Microboards Technology, LLC d/b/a Afinia ("Afinia"), by and through its undersigned counsel, submits this Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Defendant's Counterclaims of Inequitable Conduct and Strike Affirmative Defenses of Patent Misuse.

## I.    INTRODUCTION

This matter arises from allegations that Afinia is infringing upon U.S. Patent Nos. 5,653,925 (hereinafter the '925 patent), 5,866,058 (hereinafter the '058 patent), 6,004,124 (hereinafter the '124 patent), and 8,349,239 (hereinafter the '239 patent).  Afinia offers additive manufacturing solutions and in particular sells an H-Series 3D Printer.   Stratasys alleges that Afinia's H-Series 3D Printer infringes one or more claims of each of these patents.  The technology underpinning Afinia's H-Series 3D Printer is in the public domain and Stratasys is improperly asserting a monopoly against Afinia.

Afinia presents facts in its Amended Answer, Affirmative Defenses and Counterclaims that Stratasys engaged in inequitable conduct during the prosecution of the '925 patent and the '058 patent.  Afinia further claims and presents facts that Stratasys has misused its patents (see pages 7-42 of Afinia's Amended Answer, Affirmative Defenses and Counterclaims) by seeking to enforce patents that were fraudulently obtained.  Prior to allowing Afinia the opportunity for discovery, Stratasys seeks to conceal its inequitable conduct and patent misuse, by asking the Court to prematurely dismiss under Rule 12(b)(6) Afinia's claims of inequitable conduct and to strike under Rule 12(f) Afinia's affirmative defenses concerning patent misuse.

In summary, the very features the inventors sought to patent in the '925 patent (adjusting the rate of dispensing to provide a predetermined porosity) and in the '058 patent (maintaining the build environment between approximately 70°C and 90°C), were disclosed in Stratasys' own prior art FDM products (and patent), which the inventors never disclosed to the Patent Office.  The failure to disclose any information about these products in light of the rejection of the patent claims ('925 patent) and statements about the prior art ('058 patent) constituted inequitable conduct and are inexcusable.

**II.    TECHNOLOGY TUTORIAL**

In order to assist the Court, set forth below is a brief technology tutorial.  The technology at issue concerns the extrusion of a plastic filament for use in a three dimensional printer.



Declaration of William J. Cass in Support of Defendant's Opposition to Plaintiff's Motion to Dismiss Defendant's Counterclaims of Inequitable Conduct and Strike Affirmative Defenses of Patent Misuse (hereinafter "Cass Decl.")[1], Exh. 7 at p. F16-39.

The material filament is driven by drive wheels through a heated liquefier and deposited to form a three-dimensional object.  The term build environment or modeling environment refers to the actual volume in which the models can be created.  This environment is controlled by the modeling envelope temperature control.  *Id.* at p. F16-39 and Glossary (Jan 1995 and May 1993) at G-3 and G-7.

According to the undisclosed prior art manual, the structure of the object could be varied by nozzle thickness and road width.  A *road* is a narrow, shallow structure of solid material which serves as the building block.  *Road width* is the width of a road perpendicular to its outside edge.  *Id.* at Glossary, p. G-9.  To illustrate:



Roads (2) and Road Width

The undisclosed prior art '329 patent (as well as the prior art FDM machines) discloses varying the nozzle thickness (which alters the size of the roads).  The prior art FDM 1500 (circa June 1994) discloses varying the road thickness for each FDM tip diameter for both fill and support roads.  *Id.* at MI-3.  *See* Defendant's Amended

---

[1] Hereafter, references to "Exh. __" are to the exhibits attached to the Cass Decl., unless otherwise indicated.

Answer to Plaintiff's Complaint for Patent Infringement; Affirmative Defenses;

Counterclaims; and Demand for Jury Trial (hereinafter "Defendant's Counterclaims"), ¶

51.  [Dkt. No. 20].

　　　With respect to the '925 patent (which concerns porosity), the capability of

varying the nozzle thickness and changing the amount of fill (road width) is material to

the prosecution of the patent.  Indeed, Plaintiff's complaint alleges this prior art feature as

a basis for suing Afinia, alleging that the accused product incorporates a feature of

altering the percentage of fill.  *See* ¶¶ 26 and 29, Plaintiff's Complaint.  [D.I. No. 1.]

　　　With respect to the '058 patent, in which the inventors represent that they

determined that by maintaining the build environment between approximately 70°C and

90°C, an improved object could be made, the prior art FDM 1600 series (FDM 1600,

FDM 1650) is material because the specific teaching in the manual to maintain the build

environment at 70°C (which falls within the range specially stated in the patent as a

critical feature).  Cass Decl., Exh. 7, at MI 5.

## III.　ARGUMENT

### A.　Afinia Has Sufficiently Pled A Claim Of Inequitable Conduct

　　　For purposes of a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the Court takes all facts alleged in the complaint as true.  *See Westcott v.*

*Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  The Court must construe the factual

allegations in a complaint (or counterclaims) and reasonable inferences arising from the

complaint (or counterclaims) favorably to the non-moving party and will only grant a

motion to dismiss if "it appears beyond doubt that the plaintiff" or non-moving party can

-4-

prove no set of facts which would entitle him to relief.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986) (citations omitted).

The substantive issue of whether Stratasys committed inequitable conduct is not before the Court at the moment.  Rather, the issue is whether Defendant's Counterclaims satisfy the pleading standard for inequitable conduct.  The Federal Circuit's decision in *Exergen* sets forth the inequitable conduct pleading standard:

> In sum, to plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-1329 (Fed. Cir. 2009) (emphasis added).  *Exergen* also specifies that the party alleging inequitable conduct cannot put itself in the mind of the identified individuals to extract the answer to why. Rather, the party pleading inequitable conduct need only plead ascertainable facts regarding who, what, when, where and how, allowing the Court to reasonably infer specific intent.  *Id.* at 1328-1329.  While Stratasys relies heavily on *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed.Cir. 2011), that opinion concerns a substantive decision on the merits; not the pleading standard of inequitable conduct.  The prevailing standard for pleading inequitable conduct set out in *Exergen* is still followed by the Federal Circuit, without any modification from *Therasense*.  *See Delano Farms*

*Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (setting out

the *Exergen* standard post-*Therasense*); *Cutsforth, Inc. v. LEMM Liquidating Co., LLC*,

12-CV-1200, 2013 WL 2455979 at *4 (D. Minn. June 6, 2013) (holding that the *Exergen*

standard, "without any modification for the *Therasense* requirements," is the appropriate

standard to apply at the motion to dismiss stage). Thus, Afinia need not at this stage

prove every element set out in *Therasense*, but rather need only plead sufficient facts

whereby the Court may reasonably infer knowledge and intent.

### 1. Afinia Has Satisfied the *Exergen* Standard for Pleading Inequitable Conduct

More than one year before filing its applications for patent, Stratasys sold and

publicly disclosed additive manufacturing solutions that included features that were later

characterized to the United States Patent and Trademark Office ("USPTO") as features

that distinguish over the prior art. *See* ¶¶ 43-66, Defendant's Counterclaims. [Dkt No

20.]

Under 37 CFR 1.56 every applicant for a patent (and all those associated with an

application for patent) has a duty of candor and good faith in dealing with the USPTO

and must disclose to the USPTO, any and all information known to that individual to be

material to patentability as defined in Regulation 1.56. This did not happen in the

prosecution of the '925 patent or the '058 Patent. In both instances, the applicants made

overt misstatements concerning the prior art and withheld material information

concerning a prior art patent and a product(s) from the USPTO. This conduct serves the

basis for Defendant's claims for inequitable conduct and patent misuse (as to the '925 patent and '058 patent).

The '925 patent purports to cover adjusting the rate of dispensing the material to provide a predetermined porosity.  The '925 patent was applied for on September 26, 1995.  During the prosecution of the '925 patent, the USPTO rejected claims in light of prior art.  The inventor distinguished the prior art, by representing that adjusting the rate of dispensing to control the desired porosity was unknown in the prior art cited by the examiner.  Contrary to this representation, expired U.S. Patent No. 5,121,329 assigned to Stratasys (the '329 Patent), discloses changing the variation in nozzle size to change the rate of dispensation (thereby controlling porosity).  Although the existence and materiality of the '329 patent were known to Stratasys, it was not disclosed to the USPTO.  These facts are adequately pled in Afinia's Amended Answer, Affirmative Defenses and Counterclaims, pages 7-42.

The '058 patent is directed to a method of making a three dimensional object.  A key feature, as set forth in detail in the specification, was the supposed discovery of maintaining the build environment between approximately 70°C and approximately 90°C while forming the object.  The specification specifically states this is a critical temperature range for Acrylonitrile Butadiene Styrene (ABS) plastics.  More than one year before applying for the '058 patent, Stratasys sold the FDM(R) 1600 series 3D printer which maintains the build environment at 70°C for the ABS plastic.  The applicants never disclosed this series of product or its user manuals to the USPTO.  The prior art which was disclosed did not mention ABS plastics and/or maintaining the

temperature of the build environment within the teaching of the '058 patent.  This

information was uniquely available to the patentee.  These facts are adequately pled in

Afinia's Amended Answer, Affirmative Defenses and Counterclaims, pages 7-42.

A prior art reference "is but-for material if the PTO would not have allowed a

claim had it been aware of the undisclosed prior art."  *Aventis Pharma S.A. v. Hospira,*

*Inc.*, 675 F.3d 1324, 1334 (Fed. Cir. 2012) (affirming finding of inequitable conduct)

(*quoting Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir.

2011).

Similarly, Afinia has pled sufficient facts upon which the Court may reasonably

infer that the failure to disclose but-for material information known to the inventors and

Stratasys as to the '925 patent and '058 patent was done so with an intent to deceive the

PTO.  Stratasys and the inventors were clearly aware of the prior art yet chose not to

disclose such references in order to avoid further rejections from the USPTO.[2]  This was

not an accident or coincidence; it was intended to sway the Examiner.  *See W.L. Gore &*

*Associates, Inc. v. Medtronic, Inc.*, 850 F. Supp. 2d 630, 635 (E.D. Va. 2012) (holding

that "Because exclusion of material prior art could provide a patent applicant with the

significant benefit of having the application granted, Medtronic has also pled sufficient

facts upon which a reasonable inference of intent to deceive could be based.").  Thus, it is

reasonable to infer that Stratasys and the inventors' knowing misrepresentations and

---

[2] The inventors failed to disclose any of the company's relevant products on the one hand and
made arguments about older irrelevant prior art on the other.

withholding of material information from the USPTO was done with the intent to deceive.

Alternatively, though the Defendant is not legally required to plead its entire case at the pleading stage, the Defendant requests leave to amend the counterclaims to cite additional facts set forth below.  [See Additional Facts below.]

Afinia will ultimately prove that the USPTO would have invalidated certain claims of the '925 and '058 Patents if Stratasys had disclosed the '329 Patent and the substance of the FDM(R) 1650 printer to the USPTO.  At the pleading stage, however, the Defendant does not need to prove the merits of its case.  *See Exergen*, 575 F.3d at 1328-1329.  Rather, the Defendant need only "identify the specific who, what, when, where, and how of the material misrepresentation."  *Id.*  (emphasis added).  The Defendant's pleadings have done exactly that.  *See* Defendant's Counterclaims.

### a.  Who – Stratasys, Steven Crump, and John Batchelder Committed Inequitable Conduct

Afinia has identified Stratasys and the inventors of the '925 and '058 patents as failing to disclose prior art known to be material to patentability of the invention.  *See* ¶¶ 53-54 and 65-66, Defendant's Counterclaims.  In particular, the Defendant has asserted that John Batchelder, the inventor of the '925 patent, and Steven Crump, Chairperson of Stratasys, were aware of the '329 patent yet chose to not disclose it to the USPTO.  The Defendant further alleges that Crump, a listed inventor on the '058 patent chose to not disclose the prior sales and public disclosure of the FDM(R) 1650 printer to the USPTO.

Accordingly, the Defendant has specifically identified those persons who are responsible for the inequitable conduct.

### b.  What, When, and Where – Stratasys and the Inventors had a Duty to Submit the Material Information in the '329 patent and the FDM(R) 1650 to the USPTO

Afinia asserts that Stratasys withheld material, non-cumulative information from the USPTO during prosecution of the '925 and '058 patents including the '329 patent and information concerning the FDM(R) 1650 printer.  *See* ¶¶ 53-54 and 65-66, Defendant's Counterclaims.  The "when" of the pleading refers to when, during the prosecution of the patents, material information was withheld or misrepresentations made in violation of the duties of disclosure, candor, and good faith of 37 C.F.R. § 1.56(a).  "The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned."  Id.  Specifically, Afinia asserts that Stratasys and the inventors, during the prosecution of the '925 and '058 patents, withheld material information relating to public domain 3D printers rate of dispensation and the operating temperature.  *See* ¶¶ 50 and 64, Defendant's Counterclaims.

Moreover, Afinia has sufficiently identified which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found—i.e., the "what" and "where" of the material omissions. *See Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1570 (Fed. Cir. 1997) ("Information is material if a reasonable examiner would have considered it important to

the patentability of a claim." (emphasis added)); 37 C.F.R. § 1.56(a), *Exergen Corp.*, 575 F.3d at 1329.

In particular, Afinia asserts that the withheld prior art reference, the '329 patent, is relevant to patentability of the '925 patent, and specifically to a claimed feature - adjusting the rate of dispensing the material to provide a predetermined porosity. *See* ¶ 98, Defendant's Counterclaims. Afinia has further alleged that such material information is located in the '329 patent specifically at col. 3, lns. 30-41; col. 4, ln. 67 – col. 5, ln. 16; col. 7, lns. 33-37; and col. 15 ln. 52 – col. 16, ln. 1. *See* ¶¶ 103-107, Defendant's Counterclaims.

Afinia also alleges that the withheld prior art reference, the FDM(R) 1650 printer and its user manual, is relevant to patentability of the '058 patent and contradicts the inventors' assertion during prosecution of the '058 patent that claimed process was novel. Specifically the specification of the '058 patent which states in part "[m]ore preferably, the temperature should be maintained closer to the creep relaxation temperature. In the case of ABS, the temperature window falls between approximately 70º C and approximately 90º C." *See* ¶ 133, Defendant's Counterclaims. Afinia further asserts that process steps claimed in the '058 patent were practiced by the FDM(R) 1650 system. *See* ¶¶ 56-59, Defendant's Counterclaims. Afinia has therefore satisfied the "what" "when" and "where" requirements.

> **c.  How – "But For" Stratasys and the Inventors' Failure to Disclose the '329 Patent and FDM(R) 1650, the '925 and '058 Patents Would Not Have Been Granted**

When asserting inequitable conduct based upon a withholding of information, the party alleging inequitable conduct must explain "how" an examiner would have used this information in assessing the patentability of the claims. *Exergen*, 575 F.3d at 1330. Afinia has clearly set out how the '329 patent and FDM(R) 1650 printer is material and how an examiner would have used this information. *See* ¶¶ 103-107 and 133-134, Defendant's Counterclaims.

Specifically, Afinia discussed the prosecution of the '925 patent which purports to cover adjusting the rate of dispensing the material to provide a predetermined porosity. *See* ¶¶ 103-107 and 49-51, Defendant's Counterclaims. During the prosecution, as Afinia, points out, the USPTO rejected claims requiring an adjusting rate of dispensing the material to provide a predetermined porosity. *See* ¶¶ 94-98, Defendant's Counterclaims. The inventor distinguished the disclosed prior art, by representing to the USPTO that adjusting the rate of dispensing to control the desired porosity was unknown. Contrary to this misrepresentation, as discussed above, the Stratasys '329 patent discloses changing the variation in nozzle size to change the rate of dispensation. Importantly, Afinia's Counterclaim quotes an Examiner's rejection confirming the importance, and therefore materiality of adjusting the rate of dispensing (thereby controlling porosity). Further, materiality of this limitation is clearly established by the fact that the patent was allowed to issue only after the Examiner amended the claims.

In addition, Afinia's Counterclaims clearly set out why and how the FDM(R) 1650 is material to the method claims of the '058 patent. *See* ¶¶ 127-134 and 63-65, Defendant's Counterclaims. A key feature, as set forth in detail in the specification of the

-12-

'058 patent, and alleged in Afinia's Counterclaims ¶63, was the supposed discovery of

maintaining the build environment between approximately 70°C and approximately 90°C

whilst forming the object.  The specification specifically states this is a critical

temperature range for Acrylonitrile Butadiene Styrene (ABS) plastics.  Stratasys' own

product, the FDM(R) 1650 teaches maintaining the build environment at 70°C for the

ABS plastic.  The applicants never disclosed this product.  The prior art which was

disclosed did not mention ABS plastics and/or maintaining the temperature of the build

environment within the teaching of the patent.  Thus, Defendant's Counterclaims go

beyond mere allegations and establish "why" the Examiner would consider the

information material and "how" it would actually be used by the Examiner.  *Exergen*, 575

F.3d at 1329-1330.

This critical feature relates directly to Claim 1, for example, which requires a build

region "having at least a local region that exceeds the solidification temperature of the

thermally solidifiable material."  The specification is replete with discussion that

approximately 70°C to 90°C accomplishes this for ABS plastics.

## 2.   Afinia Has Pled that Stratasys Intended to Deceive the USPTO

Afinia's pleadings "include sufficient allegations of underlying facts from which a

court may reasonably infer that a specific individual (1) knew of the withheld material

information or of the falsity of the material misrepresentation, and (2) withheld or

misrepresented this information with a specific intent to deceive the PTO." *See Exergen*,

575 F.3d at 1328-1329.  A reasonable inference is one that is plausible and that flows

logically from the facts alleged, including any objective indications of candor and good faith." *Id*. Afinia asserts, and Stratasys does not dispute, that Stratasys knew of the Stratasys '329 patent and the Stratasys FDM(R) 1650 printer. *See* ¶¶ 52 and 64, Defendant's Counterclaims.

It is undisputed that Stratasys is the owner by assignment of the '329 patent and that the FDM(R) 1650 is a Stratasys product. The issue regarding intent boils down to whether the Defendant adequately asserts facts from which the Court may reasonably infer that Stratasys, Mr. Crump, and Mr. Batchelder withheld the information with an intent to deceive the USPTO. Under the facts alleged, it should be clear that they did.

Afinia has alleged more than mere conclusory statements as Stratasys suggests. Indeed, Afinia's Counterclaims establish that the omissions by Mr. Crump, and Mr. Batchelder were made with deceptive intent. In fact, having a varying rate of dispensation in relationship to the control of porosity was critical to the issuance of the '925 patent. It was the subject of rejection and highlighted by both the USPTO and the Applicant during the prosecution. After this rejection, Stratasys attempted to distinguish the prior art claiming that the adjustment of the rate of dispensation may be made to control the porosity of the article being formed and that such adjustment was entirely different from the placement of features. At no time while arguing this novelty did Stratasys disclose its own reference, the '329 patent, which clearly discloses varying the rate of dispensation.

Moreover, Afinia asserts that the Stratasys' FDM(R) 1650 printer discloses ABS and multiple material molding as well as an operating temperature encompassing 70ºC.

*See* ¶¶ 58 and 59, Defendant's Counterclaims.  It is more than significant that, more than

a year prior to the application for the '058 patent, Stratasys began selling the FDM(R)

1650 printer.  *See* ¶¶ 58 and 59, Defendant's Counterclaims.  The operating temperature

utilized by the FDM 1650 printer was a critical feature of the '058 patent, as set forth in

detail in the specification of the '058 patent (*see* Counterclaims ¶ 63).  Yet, Stratasys

knowingly never disclosed this reference to the USPTO during the prosecution of the

'058.

Stratasys and the inventors were clearly aware of the prior art yet chose not to

disclose such references in order to avoid further rejections from the USPTO.  *See W.L.*

*Gore & Associates, Inc. v. Medtronic, Inc.*, 850 F. Supp. 2d 630, 635 (E.D. Va. 2012)

(holding that "Because exclusion of material prior art could provide a patent applicant

with the significant benefit of having the application granted, Medtronic has also pled

sufficient facts upon which a reasonable inference of intent to deceive could be based.");

*Cumberland Pharm., Inc. v. Mylan Institutional LLC*, 12 C 3846, 2012 WL 6567922 at

*11 (N.D. Ill. Dec. 14, 2012) ("Allegations that the withheld information was known to

the applicant and would have been material to the PTO's examination are 'sufficient to

support an inference of intent to deceive.'") (quoting *Pollin Patent Licensing, LLC v.*

*Capital One Auto Fin., Inc.*, No. 10 CV 07420, 2011 WL 5118891, at *3 (N.D.Ill. Oct.

25, 2011)).  Stratasys' failure to disclose the features of the FDM(R) 1650 printer was not

an accident or coincidence; it was intended to sway the USPTO.  It is therefore

reasonable to infer that Stratasys and the inventors' knowing misrepresentations and

withholding of material information from the USPTO was done with the intent to
deceive.

### 3. The Facts Pled Support a Claim of Inequitable Conduct and the Affirmative Defense of Patent Misuse

#### a. The '925 Patent

In addition to the facts presented above, immediately below are additional facts
that are asserted by Afinia in its Answer, Counterclaims and Affirmative Defenses that
further support its pleading of Inequitable Conduct.  Thus, sufficient facts have been pled
to support a pleading of inequitable conduct.

During the prosecution of the '925 patent, the claims were initially rejected over
prior art patents to Cima, *et al.*, including but not limited to, U.S. Patent Nos. 5,490,962,
and 5,518,680.  ¶ 94, Defendant's Counterclaims.

During the prosecution of the '925 patent, in an Office Action dated August 16,
1996, all claims were rejected by the Examiner over prior art Cima I and Cima II.  ¶ 95,
Defendant's Counterclaims.

During the prosecution of the '925 patent, in a Response dated November 25,
1996, the applicants for the '925 patent argued:

> In general, the Cima I and Cima II references do not enable the making of
> predetermined specific porosity articles. No ranges of porosity are
> disclosed in the Cima references. No teaching in either Cima reference
> discloses specifics of porosity control. The Cima references simply state
> that porosity can be controlled. **The present claims recite specific
> processes for the construction of articles of predetermined and
> specific porosities depending upon patterned deposition and
> deposition rates**. . . [Emphasis added.]

¶ 96, Defendant's Counterclaims.

During the prosecution of the '925 patent, in a Response dated November 25, 1996, the applicants for the '925 patent argued:

> ***Neither Cima I nor Cima II suggests that adjustment of the rate of dispensation of material may be made to control the porosity of the article being formed*** *.. . [Emphasis added.]*

¶ 97, Defendant's Counterclaims.

The applicants for the '925 patent distinguished the prior art during the prosecution of the '925 patent by claiming that the adjustment of the rate of dispensation may be made to control the porosity of the article being formed and that such adjustment was entirely different from the placement of features.   ¶ 98, Defendant's Counterclaims.

U.S. Patent No. 5,518,680 to Cima, *et al.* is prior art to the '925 patent.  A copy of U.S. Patent No. 5,518,680 to Cima, *et al.* was attached as Exhibit B to the Counterclaims. ¶ 99, Defendant's Counterclaims.  U.S. Patent 5,518,680 to Cima, *et al.* describes a spacing material to the invention later claimed by Stratasys.  ¶ 100, Defendant's Counterclaims.

U.S. Patent No. 5,518,680, Example 1 discloses a variation in the porosity of the object described therein.  ¶ 101, Defendant's Counterclaims.

The prior art discloses adjusting the rate of dispensation in relationship to the relative motion between the dispensing head and support table.  ¶ 102, Defendant's Counterclaims.

Expired U.S. Patent No. 5,121,329, known (and assigned) to Plaintiff, discloses a preferred embodiment, wherein the support table moves in relative motion to the

dispensing head.  The flow of the dispensing material is controlled in proportion to the relative movement in the x-y direction of the build platform to insure the layer of each build is constant.  U.S. Patent No. 5,121,329, col. 3, lns. 30-41; col. 4, ln. 67 – col. 5, ln. 16.  A copy of U.S. Patent No. 5,121,329 was attached to the Defendant's Counterclaims as Exhibit C.  ¶ 103, Defendant's Counterclaims.  U.S. Patent No. 5,121, 329, was not submitted to the Patent Office during the prosecution of the '925 Patent. ¶ 105, Defendant's Counterclaims.

U.S. Patent No. 5,121,329, discloses varying the rate of dispensation:  U.S. Patent No. 5,121,329, was material to patentability, and "but for" Stratasys' failure to submit it to the patent office, the '925 patent would not have been granted.  At all times relevant hereto, persons associated with the prosecution of the '925 patent committed inequitable conduct by failing to disclose U.S. Patent No. 5,121, 329 to the Patent Office, as set forth below.  ¶¶ 106 and 107, Defendant's Counterclaims.

The '925 patent is one of the patents that Stratasys has attempted to include in the required License described above.  ¶ 108, Defendant's Counterclaims.

### b.  The '058 Patent

The specification of the '058 patent, attached to Plaintiff's Complaint, states:

> It has been determined that by maintaining a previously deposited material(in a rapid prototyping system utilizing thermal solidification) within a specific temperature window, that stresses present in the deposited material are relieved and geometric distortions reduced.  At least in the vicinity of where newly deposited material will be applied, the previously deposited material must be maintained at a temperature that is preferably in a range between the material's solidification temperature and its creep relaxation temperature. ***More preferably, the temperature should be maintained closer to the creep relaxation temperature. In the case of***

***ABS, the temperature window falls between approximately 70° C. and approximately 90° C. In general, an entire build layer (outside of the immediate region of the extrusion nozzle) should be maintained above the material's solidification temperature and below the material's creep relaxation temperature.***

[Emphasis Added]   ¶ 112, Defendant's Counterclaims.

The specification of the '058 patent states:

Once the entire prototype model has been completed, it needs to be cooled so that it is everywhere below the materials solidification temperature, before it is handed or stressed.   The cooling rate should be slow enough that the thermal gradient limit set by equation 2 is not violated.

¶ 113, Defendant's Counterclaims.

Claim 1 and claim 9 of the '058 patent state:

1.     A method for making a three-dimensional physical object of a predetermined shape under control of a control system, said method employing a thermally solidifiable material having a solidification temperature and a creep relaxation temperature, said method comprising the steps of:
a) dispensing said thermally solidifiable material in a fluid state from an extruder into a build region having at least a local region temperature that exceeds the solidification temperature of the thermally solidifiable material;
b) simultaneously with the dispensing of the said thermally solidifiable material, and in response to said control system, generating relative movement between the extruder and a support in the build region, so that the said thermally solidifiable material accumulates on said support to form a three-dimensional physical object; and
c) solidifying said thermally solidifiable material by cooling said local region temperature and said material below the solidification temperature of the material.

9.     A method for making a three-dimensional physical object of a predetermined shape comprising the steps of:
a) computing a sequence of commands required to produce said predetermined shape of the three-dimensional physical object;

-19-

b) dispensing a thermally solidifiable material in a fluid state from an extruder into a build environment as prescribed by the sequence of commands;

c) maintaining during step b) the build environment, at least in a vicinity of the extruder, within a predetermined temperature range, said temperature range being above a solidification temperature of the thermally solidifiable material;

d) simultaneously with the dispensing step b) and in response to the sequence of commands, mechanically generating relative movement between the extruder and the build environment, so that the said material accumulates to form the three-dimensional physical object;

e) concurrently with step d), adjusting temperatures within the build environment differentially so that the solidifiable material, upon which additional solidifiable material has accumulated, is cooled below a solidification temperature thereof; and

f) further solidifying the said object by cooling said object below said solidification temperature.

¶ 114, Defendant's Counterclaims.

The claims of the '058 patent recite a positive step of cooling.  Claim 1, and dependent claims thereto, require a control system. Claim 9, and dependent claims thereto, require "adjusting temperatures within the build environment differentially so that the solidifiable material, upon which additional solidifiable material has accumulated, is cooled below a solidification temperature thereof."  ¶¶ 115 - 117, Defendant's Counterclaims.

The accused Afinia H-Series 3D Printer operates within an ambient environment and is designed to work properly at an ambient temperature of between 60°F and 85°F and humidity of between 20% and 50%.  Among other missing elements, the Afinia H-Series 3D Printer does not have a control system controlling the cooling of the part and/or adjusting temperatures as recited in the claims of the '058 patent.  ¶¶ 118 - 120 Defendant's Counterclaims.

The use of a heated build platform was well known in the prior art.  For example, expired U.S. Patent No. 5,141,680, discloses a heated platform in a stereolithography system.  The prior art discloses heating the prototype above its solidification temperature to melt it for removal.  The use of a heated build platform was well known in the deposition of thermoplastics, such as by extrusion.  For example, expired U.S. Patent No. 5,501,824, discloses a heated platform in a system incorporating the extrusion of thermoplastics.  ¶¶ 121 and 122 Defendant's Counterclaims.

The Plaintiff and/or its counsel were aware of U.S. Patent No. 5,501,824, during the prosecution of the '058 patent and did not disclose it to the Patent Office.  A copy of U.S. Patent No. 5,501,824 was attached as Exhibit D to Defendant's Counterclaims.  ¶ 123, Defendant's Counterclaims.

More than a year prior to the application for the '058 patent, Stratasys began shipping a product known as the Stratasys FDM 1650.  Stratasys offered for sale and sold the Stratasys FDM 1650 in or about March of 1996.  The Stratasys FDM 1650 had an operating envelope that encompassed 70°C and was designed to operate and did operate with ABS plastics more than a year prior to the application for the '058 patent.  ¶¶ 128 - 132, Defendant's Counterclaims.

Stratasys and/or its counsel were aware of the Stratasys FDM 1650.  The Stratasys FDM 1650 (which encompassed an operating temperature of 70° C) was material to patentability of the '058 patent, which states "[m]ore preferably, the temperature should be maintained closer to the creep relaxation temperature. In the case of ABS, the

temperature window falls between approximately 70° C. and approximately 90° C." ¶¶ 132 and 133, Defendant's Counterclaims.

The Stratasys FDM 1650 was material to patentability, and "but for" Stratasys' failure to submit it to the patent office, the '058 patent would not have been granted.  At all times relevant hereto, persons associated with the prosecution of the '058 patent committed inequitable conduct by failing to disclose the Stratasys FDM 1650 to the Patent Office, as set forth below.  ¶ 134, Defendant's Counterclaims.

The '058 patent is one of the patents that Stratasys has attempted to include in the required License described above.  The assertion of the '058 patent against Afinia is an attempt by Plaintiff to achieve a monopoly in the markets of additive manufacturing and/or important submarkets thereto.  The assertion and continued assertion of the '058 patent against any Afinia product constitutes patent misuse.  ¶¶ 135 - 138, Defendant's Counterclaims.

### c.  The '124 Patent and the '239 Patent

The '124 patent is one of the patents that Stratasys has attempted to include in the required License that Stratasys requires all of its customers to execute.  The '124 patent require "a first thin wall tube" which "passes through the heating block.  The term "thin" is a term that must be construed in accordance with the specification of the '124 patent. Existing federal precedent requires that the construction of a term, such as the term "thin," be in accordance with the dimensions disclosed in the patent specification. The only disclosure in the specification as to the dimension of the thickness of the tube is "0.005-0.015 inches."  ¶¶ 139 -143, Defendant's Counterclaims.

The Afinia H-Series 3D Printer inlet tubular portion is approximately four times the thickness of the largest dimension disclosed in the '124 patent specification.  No reasonable interpretation of the term "thin" as it is used in the '124 patent could be construed to assert the '124 patent against Afinia ¶¶ 144-145, Defendant's Counterclaims.

The assertion of the '124 patent against Afinia is an attempt by Plaintiff to achieve a monopoly in the markets of additive manufacturing and/or important submarkets thereto.  ¶ 147, Defendant's Counterclaims.

The '239 patent is one of the patents that Stratasys has attempted to include in the required License that Stratasys requires all of its customers to enter.  During the prosecution of the '239 patent, on or about May 4, 2009, the pending claims were rejected in view of prior art.  In light of those rejections, the applicants distinguished the prior art and made specific representations as to how the claimed tool patent was different from the prior art.  ¶¶ 149 – 151, Defendant's Counterclaims.

The contour tool path(s) of the Afinia H-Series 3D Printer do not infringe the claims of the '239 patent for at least, *inter alia*, the omission of the start and stop points required by the claims, and in light of the arguments made during prosecution of the '239 patent.   The assertion and continued assertion of the '239 patent against any Afinia product constitutes patent misuse.  The assertion of the '239 patent against Afinia is an attempt by Plaintiff to achieve a monopoly in the markets of additive manufacturing and/or important submarkets thereto ¶¶ 152 - 154, Defendant's Counterclaims.

### d. Additional Facts Relevant to the '058 Patent Claim of Inequitable Conduct

1. Steven Scott Crump ("Mr. Crump") is a listed inventor on the '058 patent.

Cass Decl., Exh. 1, '058 Patent File Wrapper.

2. The '058 patent states in relevant part:

At least in the vicinity of where newly deposited material will be applied, *the previously deposited material must be maintained at a temperature that is preferably in a range between the material's solidification temperature and its creep relaxation temperature.* More preferably, the temperature should be maintained closer to the creep relaxation temperature. In the case of ABS, the temperature window falls between approximately 70° C. and approximately 90° C. *In general, an entire build layer (outside of the immediate region of the extrusion nozzle) should be maintained above the material's solidification temperature and below the material's creep relaxation temperature.*

3. The inventor additionally illustrated this point in the figures of the '058 patent. See Figure 3B for example:



4. Mr. Crump made the following representation to the Patent Office, during

prosecution of the '058 patent in his patent application:

The art is replete with various solid modeling teachings. For instance, U.S. Pat. No. 5,121,329 to Crump, and assigned to the same Assignee as this Application, describes a fused deposition modeling system. While the Crump system incorporates a heated build environment, it requires that the deposited material be below its solidification temperature, as subsequent layers of material are added. U.S. Pat. No. 4, 749,347 to Valavaara and U.S. Pat. No. 5,141,680 to Almquist *et al.* describe rapid prototyping systems

-24-

that incorporate flowable, thermally solidifying material. Both patents teach a build environment that is maintained at and below the solidification temperature of the extrusion material.

*Id.*

5.   U.S. Patent No. 5,121,329 issued on June 9, 1992 - before the use of ABS Plastics and the introduction of the FDM Systems with the build environment at 70°C, such as the FDM 1650.  U.S. Patent No. 4,749,347 does not mention temperature and issued on June 7, 1988.  U.S. Patent No. 5,141,680 is directed to stereolithography[3] and issued on August 25, 1992.  *See* Cass Decl., Exhs. 2, 3 and 4.

6.   Mr. Crump is the Chairperson of Stratasys and signed the Securities and Exchange (SEC) filings for Stratasys (which is a publically listed company) in 1997.  The filings disclose certain information concerning the introduction of the FDM Systems and the sale of ABS plastics.

7.   The 1997 SEC Annual Report is dated on March 26, 1997 and was prepared before the '058 Patent was applied for on May 29, 1997.  Cass Decl., Exh. 5.

8.   The 1997 SEC Annual Report states:

In March 1996, the Company introduced three new rapid prototyping machines for commercial sale. Genisys(R) is a 3D desktop printer which uses the rapid prototyping technology developed by IBM that the Company purchased in 1995. It is useful for the production of conceptual models employed in the early stages of the design cycle, as it enables a designer to produce concept iterations at his desk directly from a workstation in a simple push-button fashion. The FDM(R) 1650 Benchtop can produce functional prototypes at three times the speed of its predecessor, the FDM(R) 1600 Benchtop, and can accommodate a variety of engineering modeling materials. The third new product, the FDM(R) 8000, is a rapid prototyping device, which incorporates QuickSlice(R) software and the

---

[3] Stereolithography is different technology than the extrusion system taught in the '058 patent.

filament extrusion method of the Company's FDM (R) products. It is capable of building prototypes up to 24 inches in size with throughput comparable to the recently announced Stratasys FDM (R) 2000. The FDM(R) 8000 builds prototype parts using ABS plastics. Distribution of the FDM(R) 1650 Benchtop and the Genisys(R) machine began in March and June 1996, respectively, while shipment of the FDM(R) 8000 is expected to begin in the second quarter of 1997. The Company announced the FDM(R) 2000 in March 1997. It is an enhanced version of the FDM(R) 1650, but features a 30% to 40% throughput improvement over the FDM(R) 1650. Upgraded hardware and software accounts for the improved performance features. The Company expects to begin shipping the FDM(R) 2000 in the first quarter of 1997. . .

The three new systems offer product designers and developers the ability to create prototypes throughout all stages of the development cycle as well as a wide range of prices from which to choose. The prices of the systems start at $55,000 for Genisys(R) and reach $200,000 for the FDM (R) 8000. The current price of the FDM(R) 1650 Benchtop is approximately $100,000, but the price will increase to approximately $120,000 in the second quarter of 1997. The price of the FDM(R) 2000 will be approximately $140,000. By comparison, the Company's original 3D Modeler sold for between $150,000 and $180,000. Customers have the option to purchase an entire rapid prototyping system from the Company or to buy individual components. . .

MODELING MATERIAL. FDM(R) technology allows the use of a greater variety of modeling materials and colors than other technologies.  The Company continues to develop filament modeling materials which meet the customers' needs for increased speed, strength, accuracy, surface resolution and color. These materials are processed into its patented filament form, which is then fed into the 3D Modeler or the FDM(R) Benchtop systems. The Company's spool-based system has proven to be a significant advantage for its products over Ultra Violet ("UV") polymer systems, because the Company's system allows the user to quickly change material by simply mounting the spool and threading the desired material into the FDM(R) devices. Each spool weighs approximately 2.3 pounds, and the creation of a model may require from 0.1 pound to more than one pound of filament. Other advantages of the spool-based system over a UV polymer system are that the spool-based system allows the user to purchase a single spool as compared to an entire vat of UV polymer, thereby reducing the user's up-front costs and allows the customer to use the system in an office environment. . .

-26-

Currently, the Company has five modeling materials commercially available for model generation using its FDM(R) technology: a tough polyamide plastic polymer that is similar to nylon, an investment casting wax, the hard polymer material ABS (named for its three initial monomers, acrylonitrile, butadiene and styrene), which is used commercially to make products such as telephones, a medical grade ABS (MABS), used for medical applications, and a release material. Each material has specific characteristics that make it appropriate for various applications. The ability to use different materials allows the user to match the material to the end use application of the prototype, whether it is a pattern for tooling or a concept model. . .

*Id.*

9.   On or about January 3, 1995, Mr. Crump issued the following statements in a

press release:

MINNEAPOLIS, Jan. 3/PRNewswire/ -- Stratasys, Inc. (Nasdaq: SSYS) announced today that it has purchased the rapid prototyping technology developed by the IBM Thomas J. Watson Research Center in Yorktown Heights, N.Y. The technology can quickly create three-dimensional models that allow designers to examine and test prototypes during product development, which is the technology pioneered by Stratasys.

IBM's technology includes their patents, patent disclosures, prototype machines and documentation.  Under the terms of the purchase agreement, IBM becomes a significant shareholder in Stratasys, a leading manufacturer of rapid prototyping systems for automotive, aerospace, industrial, electronic, medical and consumer products original equipment manufacturers (OEMs).

"We are excited about the prospects for this technology," said S. Scott Crump, president and founder of Stratasys.  "IBM's work is complementary to Stratasys' Fused Deposition Modeling process, significantly extending our existing technology base, and enabling us to expand into new prototyping applications."

In addition to increasing business opportunities, the purchase will enable Stratasys to enhance its recently released FDM(R) 1600 benchtop rapid prototyping system that couples conventional plastics and wax materials with new ABS engineering plastics capability.

"Our customers demand ever faster product development and manufacturing cycles with ever shorter time-to-market," Crump said.  "The IBM asset purchase and a recent IPO place the company in a favorable position to deliver to our

-27-

customers the tools to help them achieve competitive advantages and positions
Stratasys with the strongest patent position in the rapid prototyping industry,"
Crump continued.

Cass Decl., Exh. 6.

10. The FDM 1600 model, sold more than a year before the application for the

'058 patent, disclosed maintaining the build environment at 70 °C.  Cass Decl., Exh. 7,

FDM System Documentation Manual.

11. Mr. Crump's statements to the Patent Office concerning the state of the prior

art were materially false and misleading as the prior art established the use of a build

environment within 70°C, within the range exemplified in the patent application, namely

the FDM products sold by Stratasys.

### e.  Additional Facts Relevant to The '925 Patent Claim of Inequitable Conduct

1.  Stratasys' Complaint alleges that the selection of the percentage of "fill"

constitutes the control of porosity.  *See* Plaintiff's Complaint at ¶¶ 26 and 28. [Dkt. No.

1.]

2.  The FDM 1500 and Quick Slice Software disclose varying the road width for

each nozzle. Cass Decl. Exh. 7, FDM Documentation System Manual, circa at June 1994

Appendix MI.

3.  The FDM 1500 and Quick Slice Software disclose that the variation in road

width can be used both for contour [of the part] and for fill.  *Id.*

4.  The variation in road width alters the porosity by changing the percentage of

the fill. *Id.*

5.   The FDM 1500 and Quick Slice Software were never disclosed to the Patent Office during prosecution.  *Id.*

6.   The inventor of the '925 patent, John S. Batchelder, was affiliated with Stratasys and familiar with its products.  *Id.*

7.   Mr. Crump participated in the prosecution of the '925 patent, executed a declaration of small entity status.  *Id.*

8.   The statements submitted to the patent office concerning the ability to control porosity were false as the prior art Stratasys 1500 allowed the control of porosity.  *Id.*

### f.   Afinia Has Properly Pled The Affirmative Defense of Patent Misuse

Stratasys has adopted a strong armed tactic to impose the taking of a license under patents that it knows will be invalidated if a court is given the opportunity to consider the same.  Afinia has pled the defense of patent misuse and Stratasys, before discovery, seeks to strike these defenses in an attempt to silence Afinia before this Court may consider the inappropriateness of Stratasys licensing scheme.

### 1. The Facts Support a Finding that Stratasys Enforces Patents it Knows were Fraudulently Obtained

Afinia offers additive manufacturing solutions that are well-suited to educational institutions, price conscientious consumers, small industry, and individuals interested in scientific research and development associated with additive manufacturing technology. Afinia has received numerous awards for its innovative styled Afinia H-Series 3D Printer. ¶¶ 74 and 75, Defendant's Counterclaims.

The industrial additive manufacturing systems is an important market for the U.S. economy. The U.S. government has sponsored the National Additive Manufacturing Innovation Institute (NAMII) as a public-private partnership with member organizations from industry, academia, government, and workforce development resources all collaborating with a singular, shared vision to transition additive manufacturing technology to the mainstream U.S. manufacturing sector. ¶ 84, Defendant's Counterclaims.

Stratasys is able to set price for the market of consumables used in the industrial additive manufacturing systems, such as ABS plastics, due to its market share. ¶ 85, Defendant's Counterclaims. As part of the purchase and sale of any product from Stratasys, a purchaser is required to accept terms and conditions of a license dictated by Stratasys. Afinia attached as Exhibit A to Defendant's Counterclaims a copy of one such License (terms and conditions) (hereinafter "License"). ¶ 86, Defendant's Counterclaims.

According to the Stratasys license terms, a purchaser is required to grant certain rights to Stratasys:

> 8.2. Customer hereby grants to Stratasys a fully paid-up, royalty-free, worldwide, non-exclusive, irrevocable, transferable right and license in, under, and to any patents and copyrights enforceable in any country, issued to, obtained by, developed by or acquired by Customer that are directed to 3D printing equipment, the use or functionality of 3D printing equipment, and/or compositions used or created during the functioning of 3D printing equipment (including any combination of resins, such as combinations relating to multi-resin mixing, color dithering or geometrical resin-mixture structure of the resin) that is developed using the Products and that incorporates, is derived from and/or improves upon the Intellectual Property and/or trade secrets of Stratasys. Such license shall also extend to Stratasys' customers, licensors and other authorized users of Stratasys products in connection with their use of Stratasys

-30-

products. - See more at: http://www.stratasys.com/legal/terms-and-conditions-of-sale#sthash.BT3eV6jh.dpuf.

¶ 87, Defendant's Counterclaims.

Afinia has pled that this required License is a contract of adhesion and violates the rule of reason of such grant back provisions, as the license back is not limited in scope of time, and purports to cover, for example, innovation of expired patents. ¶¶ 88 and 89, Defendant's Counterclaims.  Further, the required License violates the rule of reason of such grant back provisions, as the license back is not limited in geographic scope, and purports to cover patent rights for a third party's invention, such as in another country where Stratasys has no patents, where it is lawfully developed, and later acquired by a Stratasys licensee. ¶ 90, Defendant's Counterclaims.

Afinia has further pled that the required License forces a Stratasys customer that develops or acquires a new invention to share it with Stratasys and approximately fifty percent (50%) of the additive manufacturing market, regardless of whether the innovation was based on an expired patent. ¶ 91, Defendant's Counterclaims.  Thus, the required License forces a Stratasys customer that innovates a new invention to share it with Stratasys and approximately fifty percent (50%) of the additive manufacturing market, regardless of whether the innovation was acquired from a foreign country where Stratasys does not maintain patent protection. ¶ 92, Defendant's Counterclaims.  Further, the required License adversely impacts the incentives of Stratasys' customers to develop or acquire innovations in the additive industrial market. ¶ 93, Defendant's Counterclaims.

The facts pled support a finding of patent misuse.  Additionally, a motion to strike Afinia's affirmative defenses is highly disfavored and should be denied.

### 2.  Stratasys' Motion to Strike Affirmative Defenses Should Be Denied

The Eighth Circuit has held that striking a party's pleading "is an *extreme measure*" and motions to strike under Rule 12(f) *"are viewed with disfavor and infrequently granted."*  *Stanbury Law Firm, P.A. v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (emphasis added & citation omitted); *see also BJC Health Sys. v. Colombia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007).  Accordingly, "[a] motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." *Lunsford v. U.S.*, 570 F.2d 221, 229 (8th Cir. 1977). Moreover, "a motion to strike should not succeed unless the party shows that it is prejudiced by the inclusion of a defense or that a defense's inclusion confuses the issues." *Lakeside Roofing Co. v. Nixon*, No. 4:10CV01761, 2011 WL 2600421, at *1 (E.D. Mo. June 29, 2011) (citation omitted).  And even where an affirmative defense fails, leave to amend is routinely granted.  *See e.g. Openmethods, LLC v. Mediu, LLC*, No. 10-761-CV-W-FJG, 2011 U.S. Dist. Lexis 60980, at *6 (W.D. Mo. June 8, 2011) ("[I]n light of the fact that motions to strike are viewed with disfavor, the Court will not strike defendant's affirmative defenses, but rather will allow defendant an opportunity to amend its affirmative defenses."); *Perez v. Gordon & Wong Law Group, P.C.*, No. 11-CV-03323-LHK, 2012 WL 1029425, at *8 (N.D. Cal. Mar. 26, 2012).

A defense may be insufficient if it fails to meet the pleading requirements of Federal Rule of Civil Procedure 8(b) and (c).  Federal Rule 8(b)(1)(A) requires a party responding to a pleading to "state in short and plain terms its defenses to each claim asserted against it."  Rule 8(c)(1) states that a defendant "must affirmatively state any avoidance or affirmative defense," and provides a list of nineteen affirmative defenses. Furthermore, courts in this Circuit have held that the heighted pleading standard of *Twombly/Iqbal* does not apply to affirmative defenses.  *See Ash Grove Cement Co. v. MMR Constructors, Inc.*, 4:10-CV-04069, 2011 WL 3811445 at *2 (W.D. Ark. Aug. 29, 2011) ("Requiring affirmative defenses to meet the "plausibility" standard of *Twombly* would be reading language into the Rule 8(c) that does not exist.); *see also Wells Fargo & Co. v. United States,* 750 F.Supp.2d 1049, 1051 (D.Minn.2010) ("An affirmative defense is not a claim for relief, and neither Rule 8(a)(2) nor any other rule requires a defendant to plead facts 'showing' that the plaintiff is *not* entitled to relief.).

Thus, purpose of Rule 8(c) of the Federal Rules of Civil Procedure is to give the opposing party notice of the affirmative defense and a chance to respond." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005).  Afinia has done just that and Stratasys will have ample opportunity in the discovery process to sort out the facts relied upon by the Defendant, and can later challenge those affirmative defenses if they are lacking an adequate basis in fact.  *Ash Grove Cement Co.,* 2011 WL 3811445 at *2-3 (denying plaintiff's motion to strike defendant's affirmative defenses); *see also Whitserve v. GoDaddy.com, Inc.,* No. 11-cv-948, 2011 U.S. Dist. LEXIS 132636, at *8-9 (D. Conn. Nov. 17, 2011) (denying motion to strike invalidity and patent

misuse affirmative defense because each defense "clearly states a basis on which defendant plans to defend this lawsuit). Indeed, it is clear from Stratasys' 14 page argument on the affirmative defense of patent misuse in its brief that Afinia has alleged more than enough facts on which it plans to defend this lawsuit. Stratasys' argument is clearly premature. At the pleading stage the Defendant does not need to prove the merits of its case.

Afinia asserts patent misuse concerning U.S. Patent No. 6,004,124 (the '124 patent) and U.S. Patent No. 8,349,239 (the '239 patent). Both of these patents are subject to a licensing scheme which violates the rule of reason under existing anti-trust law. As set forth in greater detail below, Stratasys has market power and requires all purchasers to cross license any improvements, including those that emanate from expired and/or foreign patents, to both Stratasys and its customers. The license scheme attempts to extend the scope of the patents and violates anti-trust laws. As such it is subject to a patent misuse defense (which prohibits the assessment of any damages until the scheme is abandoned). Additionally, Stratasys is attempting to extend the scope of the thin-walled liquefier '124 patent unlawfully. During prosecution, the applicant claimed a "thin walled" tube to distinguish the prior art and is now attempting to assert the claim to a tube six times in size from the dimension disclosed in the patent.

Nonetheless, to the extent Afinia's Affirmative Defenses of Patent Misuse are based on fraud, Afinia has also satisfied the requisite heighted pleading standard of Rule 9(b). Patent misuse is a nonstatutory defense to claims of patent infringement. *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1321 (Fed. Cir. 2010). In the licensing

context, the doctrine limits a patentee's right to impose conditions on a licensee that exceed the scope of the patent right. *Id.* The basic rule of patent misuse is that the patentee may exploit his patent but may not "use it to acquire a monopoly not embraced in the patent." *Id.* at 1327.

Afinia includes in its pleadings more than mere conclusory statements or "assertions" as Stratasys suggests in support of Afinia's affirmative defenses. In particular, Afinia pled that Stratasys includes, as part of any purchase or sale of a Stratasys product, a required License of terms and conditions which the purchaser must accept. The Patents-in-suit are all subject to such a licensing scheme. As asserted in ¶¶ 89 and 90 of Defendant's Counterclaims, this licensing scheme violates the rule of reason.

Moreover, Afinia asserts the magnitude of Stratasys' market power and the monopoly Stratasys has created with this Licensing scheme requiring all purchasers to cross license any improvements, including those that emanate from expired and/or foreign patents, to both Stratasys and its customers. *See* ¶¶ 81, 83, 90-93, 110, 137, 147, and 154, Defendant's Counterclaims. In addition, according to the Wohlers 2013 Annual Worldwide Progress Report, Stratasys' market share far surpasses that of all others in the industry. *See* Exh. 8 (Wohlers Report 2013 pp. 130-132). Indeed, Stratasys itself relies on Wohlers' annual reports as well. *See* Cass Exhs. 5 and 9 (Stratasys Inc. Form 10KSB 3/27/97 and 3/31/98, for example).

Stratasys maintains and holds market power in the market for additive manufacturing systems, including equipment, materials, services, software and

consumables and held the largest number of unit sales among manufacturers of industrial additive manufacturing systems in 2012. By 2012, Stratasys had sold approximately 21,000 units in the market for industrial additive manufacturing systems, in comparison to Z-Corporation, which sold approximately 7000 units in 2012, and 3D Systems, which sold 6880 units in 2012.  ¶¶ 76 - 78, Defendant's Counterclaims.

Plaintiff held in excess of thirty five percent (35%) of the entire market share for the sale of industrial additive manufacturing systems in 2012.  The next largest competitors in the industrial additive manufacturing systems were 3D Systems (17.5%) and Objet (14.5%).  ¶¶ 79 and 80, Defendant's Counterclaims.  According to its Annual Report for the year ending 2012, Plaintiff is "the leading global provider of additive manufacturing, or AM solutions."  ¶ 81, Defendant's Counterclaims.

With respect to its merger with an entity known as Objet, Stratasys has stated in its 2012 Annual report:  Our combined marketing and sales capabilities, featuring more than 260 resellers and independent sales agent entities around the world, also provide us with extensive geographic reach.  That, together with the broader range of products offering complementary functionality the combined company can offer, should, we believe, create opportunities to cross-sell new product lines into our combined installed base and to expand our access to new customers across multiple industries.  ¶ 82, Defendant's Counterclaims.  As a result of the merger between Stratasys and Objet, Stratasys now holds approximately 50% of the market for industrial additive manufacturing systems. ¶ 83, Defendant's Counterclaims.

The Federal Circuit has characterized patent misuse as the patentee's act of "impermissibly broaden [ing] the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Windsurfing Int'l, Inc. v. AMF, Inc.,* 782 F.2d 995, 1001 (Fed.Cir.1986). *See Princo Corp.,* 616 F.3d at 1328 ("It follows that the key inquiry under the patent misuse doctrine is whether, by imposing the condition in question, the patentee has impermissibly broadened the physical or temporal scope of the patent grant and has done so in a manner that has anticompetitive effects.").

When the patentee has used restrictive conditions on licenses or sales to broaden the scope of the patent grant, the Federal Circuit has held that an accused infringer may invoke the doctrine of patent misuse to defeat the patentee's claim.  The rationale for the doctrine is that the unconditional sale of the patented item exhausts the patentee's right to control the purchaser's use of the device.  *Princo Corp.*, at 616 F.3d at 1321 ("In the licensing context, the doctrine limits a patentee's right to impose conditions on a licensee that exceed the scope of the patent right.").  *See also Apple, Inc. v. Motorola Mobility Inc.*, No. 11-cv-178-bbc, 2011 WL 7324582 at *14 (W.D. Wis. June 7, 2011) (denying motion to dismiss) ("What patent misuse is about, in short, is 'patent leverage,' i.e., the use of patent power to impose overbroad conditions on the use of the patent in suit that are not within the reach of the monopoly granted by the Government."); *VG Innovations, Inc. v. Minsurg Corp.*, No. 8:10-cv-1726-T-33MAP, 2011 WL 1466181 at *6 (M.D. Fla. April 18, 2011) (denying motion to dismiss); *Atlanta Pharma AG v. Teva Pharmaceuticals USA, Inc*., Civil Action No. 04-2355(JLL), 2012 WL 2068611 at *3 (D.N.J. June 7, 2012) ("because such a determination would likely depend on the

particular facts involved…anticompetitive behavior constitutes patent misuse via a motion to strike"); *Multimedia Patent Trust v. Apple, Inc.*, No. 10-CV-2618, 2012 WL 6863471 at *22  (S.D. Cal. Nov. 9, 2012)) (denying summary judgment) ("The doctrine of patent misuse is grounded in the policy-based desire to prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right").

Thus, Afinia has clearly set out the facts and circumstances surrounding its patent misuse defenses in accordance with both Fed. R. Civ. P. 8(c) and 9(b).

Accordingly, in light of the extreme and disfavored status of Rule 12(f) motions as vehicles for determining questions of fact or law before discovery has taken place, it would be inappropriate for the Court to strike Afinia's Affirmative Defenses for Patent Misuse prior to any discovery in this matter.  Accordingly, Defendant's Motion must be denied.

## IV.    CONCLUSION

For the reasons set forth herein, Defendant requests that the Court deny Stratasys'

Motion to Dismiss Defendant's Counterclaims of Inequitable Conduct and Strike

Affirmative Defenses of Patent Misuse. To the extent the Court finds that Defendant's

extensive factual pleadings still lack factual support for inequitable conduct claims,

Defendant requests leave to amend its pleadings as they relate to the claim at issue.


Dated:  March 14, 2014                   Respectfully submitted,


By:  /s/ Mark J. Burns                    By: /s/ William J. Cass
Mark J. Burns, Esq. (MN 0308055)         William J. Cass, Esq. (Admitted *pro hac*
E-Mail: mburns@haugenlaw.com             *vice*) (CT 415081)
Haugen Law Firm, PLLP                    E-Mail: wcass@cantorcolburn.com
130 TCF Tower                            Nicholas Geiger, Esq. (Admitted *pro hac*
121 South Eighth Street                  *vice*) (CT 428520)
Minneapolis, MN 55402                    Email: ngeiger@cantorcolburn.com
Telephone: (612) 339-8300                Cantor Colburn LLP
Facsimile (612) 339-8200                 20 Church Street, 22nd Floor
                                         Hartford, Connecticut 06103
                                         Telephone: (860) 286-2929
                                         Facsimile: (860) 286-0115


ATTORNEYS FOR DEFENDANT