```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF MINNESOTA
 2
     ------------------------------------------------------------
 3                                 )
     STRATASYS INC.,               )   Case No. 13-CV-3228(DWF/JJG)
 4                                 )
              Plaintiff,           )
 5                                 )
        vs.                        )   St. Paul, Minnesota
 6                                 )   April 18, 2014
     MICROBOARDS TECHNOLOGY, LLC   )   9:10 a.m.
 7   d/b/a AFINIA,                 )
                                   )
 8            Defendant.           )
                                   )
 9   ------------------------------------------------------------

10             BEFORE THE HONORABLE DONOVAN W. FRANK

11             UNITED STATES DISTRICT COURT JUDGE

12        PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STRIKE

13   APPEARANCES:
     For the Plaintiff:  Faegre Baker Daniels LLP
14                       LAUREN MARIE WILLIAMS STEINHAEUSER, ESQ.
                         TIMOTHY E. GRIMSRUD, ESQ.
15                       KENNETH A. LIEBMAN, ESQ.
                         90 South 7th Street, Suite 2200
16                       Minneapolis, Minnesota 55402-3901

17   For the Defendant:  Cantor Colburn LLP
                         WILLIAM J. CASS, ESQ.
18                       20 Church Street, 22nd Floor
                         Hartford, Connecticut 06103
19            And
                         Haugen Law Firm PLLP
20                       MARK J. BURNS, ESQ.
                         121 8th Street South, Suite 1130
21                       Minneapolis, Minnesota 55402

22
     Official Court Reporter:  JEANNE M. ANDERSON, RMR-RPR
23                             Suite 146 U.S. Courthouse
                               316 North Robert Street
24                             St. Paul, Minnesota 55101

25          Proceedings recorded by mechanical stenography;
     transcript produced by computer.
```

```
 1                        P R O C E E D I N G S

 2                         IN OPEN COURT

 3              THE COURT:  You may be seated, thank you.  My

 4     apologies for the late start.  It was a security committee

 5     meeting for the District that I had up, and actually there

 6     is another little seminar going on downstairs in the jury

 7     assembly room.  So, we will proceed shortly.

 8              If we can start on my right, Counsels' left?  Do

 9     you want to note your presence for the record and what

10     capacity you appear?

11              MR. LIEBMAN:  Good morning, Your Honor, Ken

12     Liebman of Faegre Baker Daniels for the Plaintiff Stratasys.

13     And with me is my partner Tim Grimsrud.

14              MR. GRIMSRUD:  Good morning, Your Honor.

15              MR. LIEBMAN:  And Laura Steinhaeuser.  And Mr.

16     Grimsrud will be delivering the argument this morning.

17              THE COURT:  All right.

18              MR. BURNS:  Good morning, Your Honor, my name is

19     Mark Burns from the Haugen Law Firm representing Microboards

20     Technology.  And with me is Bill Cass of Cantor Colburn.

21              MR. CASS:  Good morning, Your Honor.

22              THE COURT:  Good morning.

23              MR. BURNS:  Mr. Cass will be presenting the

24     argument.

25              THE COURT:  All right.  First I will represent to
```

1    you that I have had an opportunity to read the submissions

2    by counsel.  And to the extent it is relevant, one of my

3    lawyer/law clerks has also done the same.  And since each

4    Federal Judge, as most Bar members know in our District has

5    a very high patent load -- in fact just coming off a *Markman*

6    hearing from this past week.

7            But, I will have -- I will just put a couple of

8    issues out there for you each to comment on.  Obviously, on

9    the one hand we have the defense saying the patents in

10   question, the two patents in question were fraudulently

11   obtained.  And we have the Plaintiff here with their

12   motions, both on inequitable conduct, which is oftentimes --

13   even since the Federal Circuit has spoken, it frankly is

14   oftentimes, and rarely successfully pled and gotten before a

15   jury, as well as the affirmative defense issue.

16           But, one of the issues that I will be curious to

17   hear about, in light of the fact that in February -- I will

18   give you a specific date.  There was the pretrial discovery

19   conference on February 18th.

20           I would like to know from each party is:  One, did

21   you discuss with Jeanne Graham, yes, we'll be bringing this

22   motion?  Yes.  For the Plaintiffs, I will be curious to say,

23   yeah, we are letting everybody know we are coming on in on

24   these motions for the affirmative defenses and the

25   inequitable conduct.  And if that was done, if the defense

1    then said, you know, we need some limited staged discovery

2    on that issue, because that is what I have seen over the

3    cases.  And then I have had a couple of cases in the last

4    couple of years where we came back in a couple of months and

5    the plaintiff was able to convince me:  Judge, it's like

6    what we told you two months ago.  Then I ordered all of the

7    fees and all of the expense on the defendant saying:  Motion

8    is granted.  Now, let's get on with the rest of the case.

9    And defense is paying, because it is exactly as the

10   plaintiff suggested.

11          So, I will be curious to find out if that happened

12   with the Magistrate Judge, because one, obviously people

13   knew the motion was coming in.  The Plaintiffs did.  And

14   then two, obviously, the claim, with or without merit, the

15   Defendant is making is a common one, and especially in the

16   context of inequitable conduct.  We need some limited

17   discovery.

18          We certainly can't wait until next year when the

19   discovery date is done next year in the middle of 2015.

20   But, we claim they are hiding, concealing, and this motion

21   is, therefore, premature.  I would like to know if those

22   discussions were had with the Magistrate Judge.  And if they

23   weren't, why not?

24          And assuming I rule on everything in front of me,

25   in a perfect world, I would have a memorandum and opinion to

1    you within 30 days.  It won't be longer than 60.  It might

2    be a little less than that.  But, no complaints by me, it is

3    a busy, busy time.  Although, I feel like I got a semi-lease

4    on life, because I was supposed to have been in my second

5    Wells Fargo trial for seven weeks.  On Saturday night, this

6    past Saturday night, it settled.  So, to my -- probably my

7    biggest surprise in my 16 years here.  But, we will save

8    that for another day.

9          So, with that in mind, and I have read all of the

10   pleadings, including the 42 -- I think it was 42-page answer

11   by the defense, and counterclaim, so I am generally familiar

12   with that.  And "porosity," I tried to educate myself a bit

13   on some of those issues.

14         So, with that in mind, we can proceed with

15   Plaintiff's argument.  Now, I don't know if counsel

16   discussed it, I assume that absent either an objection or

17   something else that has been discussed, I can just hear you

18   out on the entire matter, rather than address one issue,

19   then the other.  If that is acceptable, I will just hear you

20   out on both the affirmative defense issue and the

21   inequitable conduct.

22         And I may, without intending to create mood

23   lighting in the room, even though we all have monitors, and

24   including for the folks in the gallery, two of whom are

25   interns with my chambers, but I may dim the lights down on a

1    presetting just so anybody who wants to look at the screen,

2    it is a little easier to see.

3         So, with that, we can proceed when counsel is

4    ready.  Excuse me.  Whenever you are ready?

5         And it is always amazing to me, not unique to this

6    type of case, but when counsel come in -- not necessarily

7    local counsel -- local counsel that have national practices,

8    as your firm does.  The sad trend, even though that trend is

9    by many fine jurists around the country, there is no one in

10   our District doing it.  But, how oral argument now, a

11   majority of Federal Judges in this country, including our

12   own circuit no longer have oral argument on dispositive

13   motions of any kind, which is shocking to me for a lot of

14   reasons.  But, we won't solve that here today.  There are

15   probably some very good reasons.  But, none of us here in

16   this District do it, and it is not coming here anytime soon.

17   So, whenever you are ready?

18        MR. GRIMSRUD:  Thank you, Your Honor.  We

19   appreciate the time this morning.

20        THE COURT:  And I am going to probably dial this

21   down, now.  I think you will still all have the lights on

22   you, but so then when we do use this -- all right?  Okay?

23        MR. GRIMSRUD:  Thank you.

24        THE COURT:  Can you see sufficiently there?

25        MR. GRIMSRUD:  Yes, perfect.  Thank you, Your

1     Honor.

2                   THE COURT:  All right.

3                   MR. GRIMSRUD:  I have two exhibits, if I may

4     approach?

5                   THE COURT:  All right.  You can bring those up.

6                   MR. GRIMSRUD:  Two copies of two exhibits, Your

7     Honor.

8                   THE COURT:  Thank you.

9                   MR. GRIMSRUD:  Your Honor, the first exhibit just

10    lays out, organizes the patents at issue in the two motions

11    that we are talking about today.  There are four patents in

12    the case which Stratasys has asserted.  Two of them are what

13    the Defendant has brought the inequitable conduct motion

14    on --

15                   THE COURT:  Right.

16                   MR. GRIMSRUD:  And then that is the 12(b)(6).  And

17    then for each of our four patents, they have a -- we have a

18    Motion to Strike their Affirmative Defenses of Patent

19    Misuse.

20                   And Your Honor, as the Court noted, with

21    inequitable conduct, I will start with the Inequitable

22    Conduct 12(b)(6) Motion.  And with inequitable conduct, the

23    pleading standard is very high for inequitable conduct.

24                   The Federal Circuit, the test for inequitable

25    conduct is very high, also.  You have to show "but for"

1    materiality, meaning if a reference was withheld, the patent

2    would not have issued but for a reference being withheld.

3            And then, also, a specific intent to deceive the

4    Patent Office by a specific person.  And the Federal Circuit

5    sets forth a very high standard under Rule 9(b) for pleading

6    inequitable conduct, where the Defendant has to allege facts

7    that plausibly show the "but for" materiality, meaning the

8    who, what, when, where, how of all this alleged reference

9    resulting in invalidity is being withheld.

10           And then also, secondly, even if materiality is

11   alleged, the specific individual facts that plausibly show

12   that a specific individual knew of the information and

13   withheld it with specific intent to deceive the Patent

14   Office -- and you can't rely on conclusory allegations, it

15   has to be factual allegations.  So, what we have brought

16   today is this Motion to Dismiss.

17           And to Your Honor's comment about, really, a case

18   management issue, we did in our 26(f) report specifically

19   agree that the Defendant could seek discovery, reasonable

20   discovery of defenses relating to unenforceability, which

21   would be inequitable conduct.  Also, patent issues is an

22   unenforceability --

23           THE COURT:  But, I didn't see anything in there

24   about let's do that within the next X number of months and

25   end it on this date.  Because one of the big concerns and

1    why the Federal Circuit stepped in as they did, I am quite

2    certain, when they did and how they did it in the patent

3    cases I have seen over the years, I have seen those

4    concerns, is -- well, we will have this for lack of a legal

5    phrase, "fishing expedition" and it defeats the whole

6    purpose if there is not staged or limited discovery, because

7    there is going to be all of this work done.

8            And so, usually, it is more common to see, well,

9    with or without agreement somebody pushes -- in our District

10   it typically is the Magistrate Judge, to say:  Well, let's

11   have then a very limited in scope period of discovery, so it

12   is done at a certain time.  So, it's either the motions are

13   either granted or denied, rather than, well, the sky is the

14   limit, we will see you -- there is just one discovery date

15   limit, as opposed to a staged -- whether that magical period

16   is 60 days, 90 days, say on an issue like this.

17           And I am referring more now to the inequitable

18   conduct, because in the affirmative defense issue, unless

19   there is an allegation which sometimes is made at the case

20   management or in the 26(f) report, if one or more of these

21   are alleged irrespective of how they are pled, here is how

22   it will change the scope of discovery.  Then, in that case,

23   and sometimes there is again staged discovery to say, with

24   these affirmative defenses in, here is how we claim

25   discovery is going to be so much broader or with the amount,

1    or sometimes there is no difference.  And then the first

2    time the Judge encounters it is at *in Limine* motions or a

3    summary judgment motion.  And out some of them go, if they

4    are going to go, unless the discovery issue is raised early

5    on saying:  Here is what is going to happen if these don't

6    go early.  So, that is kind of what I was asking about.

7            MR. GRIMSRUD:  Uh-huh.  There was no discussion,

8    Your Honor, about phased discovery or anything like that.

9    There was discussions about basically what I have said,

10   about if you do intend to amend the pleadings to, you know,

11   add a claim, you'll need to seek discovery and then

12   diligently amend the pleadings.  But, no discussion -- just

13   kind of the standard rules for that.

14           THE COURT:  All right.

15           MR. GRIMSRUD:  But there was no discussion about

16   phased discovery.

17           THE COURT:  Okay.

18           MR. GRIMSRUD:  But, Your Honor, we are seeking to

19   dismiss their inequitable conduct claims, but we recognize

20   that they made a reference to us trying to block their

21   discovery.  That is not what we are trying to do in the

22   case.

23           We recognize that they are entitled to seek

24   reasonable discovery, and then, if appropriate, amend.  We

25   don't think there is an inequitable conduct claim in this

1    case, but to the extent they discovered something that they

2    thought was worthy of amending their pleadings, then they

3    could seek leave to do so.

4            THE COURT:  And of course, I don't mean to

5    interrupt your argument, but of course you know what they

6    are saying, apart from the concealment issue.  They are

7    saying, hence -- and I will raise one issue, perhaps, and if

8    it is in here -- and it typically is, especially -- not so

9    much in a patent case, but in this setting -- but oftentimes

10   it is.  Even before *Iqbal* and *Twombly*, it was an issue with:

11   Well, if you are going to dismiss that claim, is it with or

12   without prejudice to renew it at some later date?

13           But, setting that aside, obviously you know they

14   have used their words in their opposition brief that is not

15   uncommon to say, well, we are claiming it is premature for

16   you to be hearing this because -- well, and then as you

17   said, that is because they don't want us to see any

18   discovery, because they know what it is going to show.  That

19   is really what they are claiming, implicitly, explicitly.

20           So, but what you are suggesting is that:  Well,

21   they don't have enough.  It hasn't been pled.  And this is a

22   Rule 12 setting.  So, it should go by the wayside.  And then

23   the issue will be then, of course, is with or without

24   prejudice -- I am talking now about the inequitable conduct.

25           MR. GRIMSRUD:  Yes.  Right, Your Honor, and the

1     Federal Circuit has set up this structure to -- they have

2     been very explicit about the gatekeeping rule, not wanting

3     inequitable conduct coming right out of the gate in these

4     patent cases.  You need to have the facts.  You need to have

5     the specific basis for alleging inequitable conduct.

6            And we did tell the Defendants that when they

7     first answered and asserted inequitable conduct, and we had

8     a meet and confer.  They sought to amend the pleadings.  We

9     agreed to allow them to.  And then we are back in the same

10    place.  And the reason is because they really don't have any

11    basis to be asserting inequitable conduct.

12            And I will put an example up on the screen, Your

13    Honor.  This is from their Count 9 on inequitable conduct

14    with respect to the '925 Patent.  And it really --

15    paragraphs 52 through 54 is kind of where it boils down.

16    And says, "The inventor of the '925 Patent was aware of the

17    '329 Patent and intentionally withheld it from the Patent

18    Office."

19            There's all sorts of problems with this

20    allegation.  First of all, it fails as a matter of law

21    because they don't actually allege intent to deceive the

22    Patent Office.  And there is certainly no facts in there

23    about intent to deceive the Patent Office.

24            And with respect to the inventor being aware of

25    the '329 Patent and intentionally withholding it, they

1    simply have no basis for these allegations.  That is a

2    conclusory allegation.  It is right in the wheelhouse of

3    what *Exergen* says from the Federal Circuit about, you can't

4    just aver the substantive elements, you need to allege facts

5    that could reasonably support the allegation.

6         And the reason they don't -- again, we don't

7    believe there is any inequitable conduct in the case, but

8    they certainly have no basis for making these types of

9    allegations.  They don't know anything about what the

10   inventor knew or didn't know, or did or didn't do.  There

11   has been no depositions.  There is just no facts that they

12   are aware of to support their claims, which is exactly what

13   the Federal Circuit says is grounds for dismissing these

14   claims --

15        THE COURT:  If I may ask this, and I know there is

16   an issue in the case where you are saying, well, there is a

17   distinction between -- and that is not unique to patent

18   cases between what is pled in the complaint or the answer or

19   counterclaim and what is in the brief.

20        Well, looking at what the -- and to the extent it

21   is relevant, I am looking at page 6 of their brief.  It

22   said -- in both instances they are talking about the '058,

23   '925.  "The applicants made overt misstatements concerning

24   the prior art and withheld material information concerning a

25   prior art patent and products from the PTO."

 1          And then they go on to say, "This is our basis for

 2    the inequitable conduct and patent misuse."  We will just go

 3    with inequitable conduct.  So, what you are saying is:

 4    Well, classic conclusory statements, and of course on the

 5    specific intent issue you know what the Defendant has said,

 6    and it is oftentimes said, again not unique to patent cases,

 7    but where this concept of specific intent is:  Well, one,

 8    you can't get in the minds of people; and two, the inference

 9    is jumping off the pleadings that they did it intentionally.

10    And with what we have pled, there is more than a reasonable

11    or plausible inference of specific intent.

12          So, obviously, that is where the two of you part

13    company, because I will have to either say:  Yes, it is

14    conclusory; or no, it is not.  But that is where the two of

15    you part company.

16          And of course, there is a second tear, I suppose,

17    and again I will be quiet here in a moment, but the second

18    tier where you have talked about the specifics in

19    materiality in terms of the claims and limitations,

20    themselves.  They have to go into the patent, whether it is

21    the '329 and say here is specific -- or, as they have

22    alleged, the patent that your client had, and specifically,

23    the prior art.

24          And you are suggesting that they also haven't

25    said:  Well, it is just not enough to refer to the patent.

1    And I suspect the defense is going to get up and say:  Well,

2    that is why we gave you that two or three-page tutorial.

3    Because we wanted to show you, well here if it is not plain

4    what we are claiming, here it is.  And by tutorial I am

5    talking about their two or three pages in there, their

6    responsive memorandum.

7          But, I will try to stop talking here, but

8    obviously, those are kind of the issues that have been laid

9    out in front of me.  And they are common -- I would expect

10   to see those in this inequitable conduct when that issue has

11   been put in front of me at this stage of the case.

12         So, I guess I will let you kind of tell me what is

13   most important for me to know today, and we will go from

14   there.

15         MR. GRIMSRUD:  Yeah, Your Honor, I will address

16   those comments.  I guess for the intent issue and what is

17   conclusory and what is not conclusory, I think one way to

18   view it is a spectrum.  On the one hand, there is conclusory

19   assertions.  The other end of the spectrum is going to be

20   something that is extremely specific, and in the middle

21   there could be a gray area.

22         Here we are at the conclusory end of the spectrum,

23   because as far as what the inventors knew or what the

24   inventors did, this is pure conjecture on their part.  They,

25   for materiality, you are right that we have also explained

1    in our briefing how these references -- we don't believe

2    they have alleged materiality.  They haven't explained how

3    they are not cumulative, how they would result in invalidity

4    but for their omission from the Patent Office.

5            And on the '329 Patent, for example, that is at

6    issue for the '925 Patent?  The '925 Patent is about,

7    generally about this predetermined porosity, is what it is

8    called.  The '329 Patent, you can read it -- the word

9    porosity doesn't even appear in the '329 Patent.  So, that

10   is the kind of thing where you need factual explanations for

11   why this isn't cumulative, why the Patent Office would not

12   have allowed the claims in view of that reference.

13           But, the intent, there is just no allegations of a

14   specific individual having known of specific material

15   information, and then intentionally withholding it with an

16   intent to deceive the Patent Office.  There is just no

17   allegations, whatsoever.

18           And really what their claim comes down to is they

19   are saying -- I think what they will say is, well, these

20   inventors knew of these references.  In the case of the '058

21   Patent, knew of this prior product, the 1650, because they

22   were developed by Stratasys.  This '329 Patent has a

23   Stratasys person as the inventor.

24           But, that would be an end-run around pleading

25   inequitable conduct.  Because basically what they are

1   saying, then, is anytime a defendant can find prior art that

2   is of the plaintiff's, if they can somehow say it is

3   material -- which again we don't think they have -- but if

4   they can allege it is material, then that satisfies the

5   intent requirement, which would basically mean anytime the

6   defendant finds prior art that is not disclosed by the

7   plaintiff, that is the plaintiff's own stuff, that is enough

8   to allege inequitable conduct, which we believe the Federal

9   Circuit has said that is not the case.

10          There are actually cases saying things like even

11   articles that are authored by an inventor are -- failure to

12   disclose those does not establish intent to deceive, because

13   you need to show specific intent to withhold the reference

14   and to deceive the Patent Office.

15          Also, another problem with their pleading, which

16   is really highlighted from their brief is how they don't

17   focus on a specific person.  They talk about the inventor

18   shown in paragraph 53, there.  They switch to Stratasys'

19   failure in their brief.  They talk about -- it appears they

20   are talking about the prosecuting attorneys that are

21   involved.  So, they are all over the place on what happened,

22   who did what, which is the kind of conclusory, unspecific,

23   allegation of unethical conduct that should not be

24   permitted.

25          THE COURT:  Well, it seems to me you touched on

1    it.  I don't want to oversimplify this argument.  And I am

2    trying to read my handwriting here in my notes.  But, I

3    think the reason they introduced the tutorial is they used

4    the phrase, quote, "the very features" and then they go on

5    to say something you said a minute ago.  Well, Judge --

6    these are my words, not theirs.  They are saying:  Look

7    closely, Judge, if we take the phrase "adjusting the rate of

8    dispensing to provide a predetermined porosity," they are

9    saying, look carefully, because that was all disclosed, that

10   was all in that prior art.

11        And if you understand that, Judge, you will

12   understand why we claim they fraudulently obtained these

13   patents.  That is separate from the argument that you both

14   touched on about:  Well, they are trying to maintain a

15   monopoly in this area of technology.

16        But, that is really kind of what they are saying.

17   And you touched on the porosity piece a moment ago, but that

18   is in effect -- and I guess we are at the stage now where --

19   and then I'll -- I promised I would before stop interrupting

20   your argument.

21        But, where -- obviously, I will have to either

22   agree in whole or in part with you, or disagree.  But then I

23   think before you are done, whether it is now or in rebuttal,

24   I think I would like to make sure I understand the -- at the

25   end of the day saying:  Well, because I suspect there is

1      going to be an issue -- well, let's just say as an example,

2      I come your way on the inequitable conduct.

3              You suggested, well, they should have waited to

4      amend, because discovery may show, if they are going to have

5      it, they haven't shown it.  Well, and I actually thought

6      that maybe that is what you were trying to avoid is this:

7      Well, we don't want to have this limitless discovery, so

8      unless you shut it off now on inequitable conduct, because

9      that is obviously something that a lot of judges have

10     commented over the years, it opens up the floodgates.

11             I just want to make sure I understand, not just --

12     obviously, you have kind of put clearly through the merits,

13     but, procedurally, where you think this should be at the end

14     of the day, too.

15             Because I think you suggested that, well, let's

16     just say, for example, I granted the motions.  To the extent

17     they say it is premature, you assume they will be back.  If

18     the discovery -- as opposed to you saying, if there is a

19     motion to compel saying:  Look it, the Judge has already

20     dismissed that claim.  Why are we going into this, this, and

21     this?  Because that is sometimes an issue early on in the

22     case, too.  You either have a showing of inequitable conduct

23     or you don't.  And if you don't, then that should end the

24     inquiry early on so it doesn't go on ad infinitum.

25             But, anyway, I will sit tight, here.  And you may

1    be saying:  I've already answered that question for you,

2    Judge, well then you can move on if you wish.

3           MR. GRIMSRUD:  Your Honor, as we acknowledged in

4    the 26(f) report, we recognize that there can be reasonable

5    discovery, but there is definitely a point in time where it

6    would become too late to add inequitable conduct.  Our

7    position is, they would need to diligently seek leave to

8    amend.  And if they -- you know, if they don't do so, then

9    they wouldn't be allowed, in our view, to have inequitable

10   conduct --

11          THE COURT:  And of course it is true, apart from

12   this case and inequitable conduct, there is in every order a

13   separate deadline to amend.  And then sometimes that

14   corresponds with some staged discovery.  Oftentimes it is

15   like this.  There isn't that staged or limited discovery,

16   but there is that deadline that kind of self imposes that

17   for a -- to amend.

18          And obviously, I will rule on what is in front of

19   me.  I am not going to kick the can down the road, but I

20   will rule on what is in front of me.  And I will be curious,

21   you know, how -- whether it comes from the plaintiff's side

22   or defendant's side, not unique to patent cases where a

23   lawyer alleges or a party alleges:  Well, we claim this

24   motion is premature and here is why.  Of course, it is a

25   little bit different if it is in a summary judgment setting,

1    of course, as you know.  But, we will see how they handle

2    that, because that was kind of what they suggested.

3           And then, of course, the issue is:  Well, whether

4    that is true or false, what is the remedy for that?  And you

5    have addressed that.  So, I will cease interruption and let

6    you tell me what is most important for me to know for your

7    client.  So --

8           MR. GRIMSRUD:  No, thank you, Your Honor.  And

9    there is deadlines for amending.  And as we said in our

10   brief, to the extent they were going to amend, we believe

11   they need to seek leave under the Rules, follow the

12   procedure for amending, and all of that.

13          On the tutorial I want to touch on that, as well.

14   None of this is in their pleading.  So, they introduced

15   quite a bit of documents in there -- and arguments in

16   their --

17          THE COURT:  And I acknowledge you raised that in

18   your reply brief.

19          MR. GRIMSRUD:  Yes.  We raised that, yes.  And

20   that is also -- they have talked about additional facts that

21   they would like to use if they did some day seek leave to

22   amend, including -- but, including for the porosity patent,

23   they actually say the FDM 1500 product.  So, that is an

24   example of them shifting around.

25          You know, now they are talking about a different

1    product, totally different than this '329 Patent they are

2    talking about in their pleading.  So, we think there is a

3    real problem here of conclusory allegations, their shifting

4    theories, they don't identify a specific person.  They go

5    back and forth between one inventor, both inventors.  Is it

6    Stratasys, as a whole?  The company as a whole?  Is it all

7    the applicants, whoever that would include that were

8    involved in filing the patent?

9         So, to sum it up on inequitable conduct, they

10   don't allege the specifics for materiality.  And they don't

11   identify a specific person who knew of material information

12   in a reference and then withheld that information from the

13   Patent Office with an intent to deceive the Patent Office.

14   They have no factual allegations to support that.

15        And really, their argument is to try to show

16   intent.  It appears to be that, well, these were Stratasys'

17   products.  This is a Stratasys patent, so therefore the

18   inventor has intended to deceive the Patent Office.  That is

19   not a reasonable inference.  That is just conclusory.

20        And again, it would be an end-around the pleading

21   requirement by basically saying that anytime the plaintiff

22   has prior art that wasn't disclosed, you can infer intent to

23   deceive.  And the Federal Circuit has rejected that type of

24   argument.

25             THE COURT:  And not to be -- for me, I'm not

1    saying for you, but for me, not to be repetitive, aren't

2    they in effect saying -- and then it comes back to, separate

3    from the premature and discovery issue, it comes back to,

4    well, either it is conclusory or it is not.  I was looking

5    at some other notes I had.

6            In effect, what they are saying is because the

7    features are so common -- and another one they mentioned is

8    the altering the percentage of fill.  They are saying

9    because these features are so common, Judge, by not

10   disclosing this prior art, they knew if they did, the show

11   was over, that they would not receive their patent.

12           And what you are saying is, well, one, you are

13   saying part of this is in the brief, not in the pleadings.

14   And the other thing you are saying is no matter which place

15   it is, it is conclusory assertions that doesn't fit the 9(b)

16   and the Federal Circuit's test they put together that is

17   essentially a 9(b) with some individualized holding with

18   respect to patent cases; but, that is, in effect, I think,

19   what you are saying?

20           MR. GRIMSRUD:  Right, and that there are zero

21   factual allegations about specific intent to deceive or

22   withholding of any of this material.  You know, setting

23   aside whether or not -- you know, there are issues of

24   whether or not inventors knew of things, and then also the

25   relevant inquiry is did they know of what is allegedly

1    material?  And then did they withhold it with a specific

2    intent to deceive the Patent Office?  And there is no

3    factual allegations that go to any of that, of the intent

4    elements.

5              THE COURT:  Well, and it will be -- and again,

6    this may be semi-repetitive of what I just said, but we will

7    know for sure when the defense takes the podium.  Because,

8    not to oversimplify your position over theirs, but they seem

9    to be suggesting, and hence -- and I have used that phrase

10   before -- this mini-tutorial that:  Well, it is so obvious

11   if one takes a look at these two patents, that anybody

12   skilled in the art would have known if we disclosed this

13   prior art, these patents will not and can not be obtained.

14             I mean, that seems to be -- and I anticipate in

15   part they are going to say:  Well, our burden isn't that

16   high to say that, well, unless it appears to the court that

17   it's so obvious, these features and these limitations are so

18   obvious that no one could possibly think otherwise, so hence

19   the materiality and specific intent.

20             And you are saying, clearly, in your argument

21   today and in your briefing, assuming I have not

22   oversimplified their position or over-characterized it.  You

23   are saying:  Simply not enough.  Saying it so doesn't make

24   it so is in part what you are saying.

25             MR. GRIMSRUD:  Yeah, that is in part what I am

1    saying is that you have to have specific allegations that go

2    to the intent element.  And without them, you are out of

3    luck.

4              Also, with the comments about it being so obvious,

5    those allegations are not in the Complaint.  And as I was

6    saying before, the '329 Patent actually doesn't even talk

7    about porosity.  So, to say that it is so obvious to connect

8    the two would be a pretty big leap.  And it is certainly not

9    in their pleadings.  But, the '329 Patent doesn't talk about

10   porosity.

11             And then to touch on the other patent, the '925

12   Patent -- or sorry, the '058 Patent where the inequitable

13   conduct claim there is directed to this prior device, the

14   FDM 1650.  And it is the same problems on the allegations of

15   the intent to deceive.  They don't have anything.  They

16   shift between inventors and Stratasys.  They don't have any

17   factual allegations that a specific person withheld that,

18   knowing that it had allegedly material information in it,

19   and then also with intent to deceive the Patent Office.  So,

20   their pleadings on Count 10 of the inequitable conduct fail

21   for the same reasons.

22             But, then, also, the patent in that case, they

23   talk about how -- they talk about how the prior FDM 1650

24   device was able to heat up to 70 degrees.

25             THE COURT:  Right.

1          MR. GRIMSRUD:  Well, they don't explain how that

2     ties into a claim limitation, for one, which is a big

3     problem of materiality, which the Federal Circuit talks

4     about how for materiality, you need to show things like

5     facts going to the what, when, where, the how, so where

6     exactly is this feature that was allegedly withheld in the

7     claims?

8          And they don't identify any claims in the patent.

9     They certainly don't identify claim limitations.  And what

10    they do talk about is how the specification of the patent

11    talks about it being -- the temperature range being between

12    70 and 90 degrees.

13         Well, what they are saying about this prior FDM

14    1650 device is that it went up to 70 degrees.  The

15    specification talks about 70 to 90.  So, 70 degrees isn't

16    even within the 70 to 90 range.  And the claims, actually --

17    this is where it is important to look at the claims, because

18    the claims of the patent talk about how the temperature has

19    to be above the solidification temperature.  So, if what

20    they are saying is that the solidification temperature is 70

21    degrees, the claims are saying it has to be above that.

22         So, this FDM 1650 device, they haven't even shown

23    that is above 70 degrees.  So, they haven't, they have not

24    explained how it could possibly be material.  And that's one

25    example of the problems with not alleging the factual

1    allegations of what exactly is material, what claim are we

2    talking about, what claim limitation is relevant, where

3    exactly in the claim limitation is this information that was

4    withheld?

5            They don't do any of that in their complaint, or

6    in their counterclaim, which is why they also -- one of the

7    reasons why they also fail to allege "but for" materiality.

8    And as I said, on Count 10, they also don't allege any

9    factual information to suggest that a specific person knew

10   of this allegedly material feature and withheld it with a

11   specific intent.

12           THE COURT:  All right.

13           MR. GRIMSRUD:  So, Your Honor, I will move on to

14   the patent misuse claims briefly of the Defense'.  I will

15   put an example up on the elmo.  Their allegations of patent

16   misuse are -- we explain this in our brief, but they are

17   essentially the same for all of their patent -- all four of

18   their patent misuse defenses, is that they say it is the

19   assertion of the patent against them that constitutes patent

20   misuse.  So, they say that Stratasys by asserting, in this

21   case, the '925 Patent against any Afinia -- I think it is

22   supposed to say, any Afinia product constitutes patent

23   misuse.

24           And then I will give another example.  This is the

25   ninth affirmative defense for the '058 Patent.  They have

1    the same allegations that in this case the assertion and

2    continued assertion of the '058 Patent against any Afinia

3    product constitutes patent misuse, then they go on to say

4    the assertion of the '058 Patent again Afinia is an attempt

5    by Plaintiff to achieve a monopoly in the market.

6           So, their patent misuse defenses are all based on

7    this theory that Stratasys' assertion of the patents against

8    them is patent misuse.  And as we explained in our brief,

9    Congress, the Federal Circuit is clear that asserting a

10   patent against somebody is not patent misuse.

11          Section 271(d) of Title 35 says, asserting a

12   patent is not misuse.  Then the Federal Circuit elaborates

13   on that and says:  That is right, even wrongful assertion of

14   your patent -- even if the Plaintiff, for example, is wrong

15   on the issue of infringement, that is not patent misuse.

16   Because the Plaintiff has the right to assert patents.  So,

17   that is not patent misuse.  There's narrow exceptions that

18   we have explained in our brief.

19          THE COURT:  And you are saying that whether it is

20   the fraud or the sham or the other exceptions

21   inapplicable -- and the two of you part company there,

22   but --

23          MR. GRIMSRUD:  Well, we actually -- we explain

24   how -- we do explain how their fraud exception does not

25   apply.

1          THE COURT:  Right.

2          MR. GRIMSRUD:  They have not alleged that.  Same

3    with the sham exception.  To show sham, you need to allege

4    things like the litigation, as a whole, is objectively

5    baseless.

6          And then in addition, that the lawsuit is being

7    brought for no purpose other than an anti-competitive effect

8    to harm your competitor.  So, it is very high for the sham

9    exception, as well.  And we went into detail on that in our

10   brief.  And in their response brief, they ignored it all.

11   They didn't say anything about 271(d), they didn't say

12   anything about any of these Federal Circuit cases we cited.

13   They didn't say they met the fraudulent exception.  They

14   didn't say they met the sham exception.  They literally

15   ignored our argument on that, which in our view means they

16   have completely abandoned their patent misuse theory.

17   Because the only theory they have is this theory of

18   assertion of the patents, and that is it.

19          Instead, what they have done in their response

20   brief is switch to this other theory based on licenses that

21   Stratasys has with its customers, not Afinia.  So, they are

22   saying that the misuse somehow results from license

23   agreements that Stratasys enters into with its customers.

24   And we have explained in our brief how, one, that theory

25   isn't pled.  That is not a basis of the misuse.

1          They allude to the license in some paragraphs, but

2     they don't say that the license is patent misuse.  The only

3     patent misuse theory was the assertion of the patent which

4     is legally foreclosed by law, which is one of the, you know,

5     key reasons for having Rule 12(f) for striking defenses when

6     they are foreclosed by law.  And they don't address it,

7     which means they have abandoned it, in our view.  So, that

8     should be clearly out of the case.

9          And then they license -- so, the license theory is

10    not pled.  In addition, they don't have any case law

11    supporting it, and the Federal Circuit is clear that patent

12    misuse isn't this catchall defense that you can allege for

13    any type of what you think is wrongful conduct.  You need to

14    be -- this is in the *Princo* case from the Federal Circuit.

15    You need to be in very narrow areas where patent misuse is

16    recognized.  And they haven't -- they don't fall into any

17    category that they have shown a case for that supports

18    patent misuse.

19          In addition, their theory is very -- it is kind of

20    speculative in the extreme, I guess you would say.  Their

21    theory is essentially that this license that Stratasys has

22    with customers includes various -- a grant-back provision

23    where Stratasys would get a non-exclusive license to use

24    certain property of their customers to the extent the

25    property is based on Stratasys' intellectual property.  And

1    they are saying that means that Stratasys gets grant-backs

2    for expired patents.

3           And there is no evidence at all that Stratasys or

4    anyone has ever interpreted that license to include expired

5    patents.  You know, the reasonable reading would be, if it

6    says patents, you are talking about patents in force, not

7    expired patents.

8           So, there is no -- it is totally speculation.  It

9    is an unreasonable reading of this license agreement.  It is

10   not supported by law.  We think this kind of theory, in

11   addition to not being pled, is a waste of time and

12   immaterial, because it is not a relevant issue.  And so,

13   that is the reason for striking it.

14          THE COURT:  Again, not to oversimplify the

15   position of either party, but the theme -- whether there is

16   a changed theory or not, we will see how Defendant responds

17   to that that you raised in your brief and today.  But, a

18   theme throughout this, and then the question is well just

19   how far does it reach and how is it pled, is the fraudulent

20   obtainment of the patents.

21          And I anticipate hearing about, well, there is,

22   after all, this fraud exception.  And of course, you have

23   discussed that with respect to the inequitable conduct.

24   But, that is kind of the theme that I think is through the

25   answer and counterclaim of the defense.  But, we will see if

1    that is a key issue here that is relevant to the affirmative

2    defenses that have been pled.

3              MR. GRIMSRUD:  And Your Honor, again, I will

4    finish up here.  But, the fraudulent obtaining exception for

5    patent misuse, that is not addressed in -- you know,

6    Defendants don't address that in the brief.  In our view

7    they have abandoned it and gone on to this different theory

8    based on a license.  So, in their brief, they don't argue

9    about fraudulent obtaining the patent as an exception for

10   patent misuse.

11             Also, another point is that with these affirmative

12   defenses of patent misuse, they have only asserted

13   inequitable conduct for two of the patents, so for two of

14   the patents they haven't even tried to assert inequitable

15   conduct, which you would think means there is no chance that

16   there is fraudulent obtaining for the '124, or the '239

17   Patents.

18             And to the extent inequitable conduct is

19   dismissed, there couldn't possibly be a fraudulent obtaining

20   exception for the '925 and '058 Patent.  If they haven't

21   pled inequitable conduct, there is no way they could plead

22   fraudulent obtaining --

23             THE COURT:  All right.

24             MR. GRIMSRUD:  -- which actually some courts say

25   would have a higher standard to allege fraudulent obtaining

1     the patents if there's actually fraud on the Patent Office.

2             But again, they haven't addressed any of this in

3     their briefing with respect to their patent misuse defense

4     that would be based on fraudulent obtaining.  So, it will be

5     interesting to see what they say, but in their briefing they

6     did not address any of the possibilities of exceptions to

7     271(d), so in our view, all of their patent misuse defenses

8     should be stricken.

9             THE COURT:  All right?

10            MR. GRIMSRUD:  Thank you.

11            THE COURT:  Thank you.  And there will be time for

12    rebuttal.

13            MR. CASS:  Good morning, Your Honor.

14            THE COURT:  Good morning.

15            MR. CASS:  It will take me a minute to set up.

16            THE COURT:  You know, the last few weeks when

17    people have been coming here, lawyers from around the

18    country for different things, they are questioning the

19    calendar.  I don't mean the Court calendar, I mean the

20    calendar that says it is supposed to be springtime in

21    Minnesota.

22            MR. CASS:  I have to laugh, Your Honor, because I

23    actually live in Massachusetts and commute to Hartford and I

24    live in a little farm town.  And we had an inch and a half

25    of snow a few days ago.

1          THE COURT:  Oh, you did, did you?

2          MR. CASS:  I sympathize.  Hopefully I can do this

3     correctly.  Hey, how about that?  I have previously given --

4          THE COURT:  Yes, I have it.

5          MR. CASS:  -- the presentation.

6          So, what I would like to begin with is, if the

7     Court permits this, with the inequitable conduct and the

8     *Exergen* standard which says -- it does tell us that you can

9     make a reasonable inference from the facts that are before

10    you.  Because, after all, specific intent, unless you have a

11    smoking gun, you are never going to get that in this case.

12         And there are three other cases that I cited in my

13    brief that I think are extremely important for the Court to

14    consider.  And those three cases are the *Aventis Pharma*

15    versus -- these are all post-*Therasense* cases.

16         The *Aventis* case is interesting because it is

17    almost all on all fours with this case.  It involved a

18    situation where the inventors disclosed prior art discussing

19    the problem to be solved, the problem they were trying to

20    solve.  But, they didn't disclose the art that was relevant

21    to how you would solve the problem.

22         And also, the *W.L. Gore -v- Medtronic* case, that

23    was a case with an intraluminal stent graft, and they made

24    statements about the prior art, which were false.  And I am

25    going to explain in a minute why we have that here.  And

1    then the *Cumberland Pharm.* case where, like here, you had

2    prior use of their own product.  You had failure to disclose

3    the prior art, and failure to show what was being marketed.

4         So, kind of with that in mind, I want to just talk

5    a minute about my little technology tutorial, because it is

6    a kind of an interesting technology.  It prints

7    three-dimensional parts.  And as Your Honor might know from

8    our brief, when we talk about the -- there are two things.

9         One is, how dense are you laying down the goop,

10   the plastic, right?  And I call that road width, but it can

11   also be the fill percentage.  That is how we get into the

12   whole porosity thing.

13        And the second thing is the temperature which

14   basically the heating cabinet is maintained.  What is the

15   temperature at the heating cabinet?  So, the first one, the

16   porosity one is the '925 one that is talking about porosity;

17   and the second one is the heating cabinet, which is the '058

18   in terms of inequitable conduct.  And I think we all

19   understand the concept of road width.

20        So, the first thing I want to talk about is the

21   '058 Patent.  If you look at that patent, Your Honor --

22   perhaps I can switch over to the elmo, too, if I am artful,

23   but nearly every passage in that patent is about maintaining

24   that heating cabinet between -- and it is not above 70, it

25   is between approximately 70, to approximately 90.  That is

1    the words that are cited in our counterclaim.

2         It is not above.  He said in his argument papers

3    that it was above.  And as Your Honor may know from these

4    cases, under the *Titanium Medical Products* case, if you are

5    within a range -- if something is important within a range

6    in patents, and you are anywhere in that range, that is an

7    invalidating circumstance.

8         So, I wanted to correct that, because the phrase

9    is approximately 70 to approximately 90.  And before they

10   applied for this patent and put all of these figures in this

11   patent, and they were disclosing and representing to the

12   Patent Office just like in these three cases I cited, they

13   are making a representation to the Patent Office:  We

14   discovered something unique.  If you maintain between 70 and

15   90, each time you put a new layer on, it is going to meld

16   together better, is what they are saying throughout the

17   entire patent.  And their own equipment did it.

18        And if you go back, if you look at the table --

19   this is just an example of the figures.  Every major figure

20   in the patent talks about depositing it in this very

21   specialized window.  And their own prior art said maintain

22   it at 70.  So, it is within that window on every single

23   figure.  And that is really the crux of the -- oh, also,

24   they represented ABS plastics were novel, too.  But they

25   were using ABS plastics years before.

1          And they made this representation, the prior art

2    they cited, none of the prior art on the face of the '058

3    Patent, if you look at the prior art that he made his

4    statements about, none of them mentioned ABS plastics, and

5    none of them mentioned this 70 degree temperature range,

6    which is what the entire patent is about.  Okay?

7          So, like *Aventis* and *W.L. Gore* and *Cumberland*

8    *Pharm.*, you have overt misrepresentation on the part of the

9    inventor about what the patent -- the problem to be solved

10   is in the patent.

11         THE COURT:  Now, what of their both today and in

12   the briefing saying:  Well, one place Defendant's say

13   inventor, the next one they use the entity's name.  Another

14   one they -- what is most important for me to know about --

15   you heard the arguments, I won't repeat it.  And if you are

16   going to comment on it later, I will just sit tight on the

17   naming with particularity, or the specific individual or

18   individuals.

19         MR. CASS:  Well, it's funny, because it used to be

20   you tried to be gentlemanly in your pleadings, now I see I

21   should have been a little more aggressive.  But, clearly,

22   Mr. Crump -- and I pointed this out in my reply briefs.  We

23   have the evidence in spades.  He is Chairman of the Board.

24   He signs the press releases all about the 1650 and the 1600

25   going out.

1              If the Court were to find that this, in and of

2      itself isn't enough, because here you have an overt

3      misrepresentation of their own product, of their own product

4      to the Patent Office, okay?  If the Court were to find that

5      wasn't sufficient, we could easily plead what we would need

6      to do to include Mr. Crump.  And we can relate it to the

7      claims, I think, under the nature of the prosecution of this

8      case.

9              This was a case where there was just a first

10     office action allowance.  It just went poof.  And it went

11     poof because they withheld something that was right in the

12     range of what they are claiming was novel with the specific

13     ABS plastic.  And if you look at the prior art patents I

14     cited, that was one overt misstatement.  And I did include

15     the other one in my brief.

16             But, look what he says, look what they say about

17     the prior art.  They say, they identify the '329 Patent,

18     that they didn't put of record in the other one.  So, here

19     is evidence that they knew about it, anyway.  Because, that

20     was his patent.

21             So, clearly, if you look at the '058 Patent, both

22     Mr. Batchelder and Mr. Crump are inventors and he signed

23     this declaration.  I don't know if this one preceded the

24     other, but clearly Mr. Crump knows about the patent.

25             These three patents have nothing to do with the

1   use of ABS plas -- patents, or with -- one is to

2   stereolithography, Your Honor, and that is a technology

3   where you have a vat of goop.  And what happens is a layer

4   is laid down and a laser comes by or a UV light heats part

5   of it, and then they put another vat of goop.  It has

6   nothing to do with FDM.

7        And the other one doesn't disclose any kind of

8   heating cabinet there.  So, we have the whole overt

9   misstatement in the patent, itself, saying we just invented

10  70 to 90 degrees with ABS plastics, which wasn't true, and

11  then they mischaracterize it in this misstatement that, you

12  know, it is novel over all of this prior art.

13       And this is exactly on all four corners with

14  *Aventis*, *W.L. Gore* and *Cumberland*.  And this is what we

15  allege in the pleadings with specificity.  We say the

16  statement that they made, we give the statement, and we give

17  precisely the prior art that invalidates that statement.

18  This is an overt misrepresentation.

19       And where you have a misrepresentation, that is

20  enough to plead inequitable conduct.

21       THE COURT:  Well, and then -- and you've --

22  obviously, one of you has to be incorrect today, because

23  obviously you have heard, consistent with their brief,

24  Plaintiff's suggest:  Look it, it isn't simply enough to

25  say -- and I am sure you are going to touch on it.  I have

1     used the word, well, it is so obvious, you don't have to

2     break it down by limitation or this specific claim, but they

3     are suggesting:  Well, it is not enough what they have

4     alleged.  Saying it so doesn't make it so.  But, did I

5     oversimplify your argument when we were exchanging about the

6     it's so obvious phrase?

7             MR. CASS:  Yeah, it is so obvious, Your Honor,

8     that there is no way that these inventors associated with

9     this company -- this isn't this abstract concept of, oh,

10    well, we had this parallel patent application in Germany.

11    And oh, my goodness, there was a reference cited there.  Oh,

12    and you didn't cite it in your U.S. case.  This is an overt

13    statement to the Patent Office about the novelty of this

14    entire patent.

15            Every single -- if you look at the -- and I won't

16    switch to the elmo because -- I probably will -- well, let

17    me just switch to the elmo for a second just to show you how

18    obvious this is.  Is that the camera, doc camera?

19            THE COURT:  We can probably do that.  Shall I do

20    that here?  Oh, you got it.

21            MR. CASS:  I think so.

22            THE COURT:  I think so.

23            MR. CASS:  I am not always the sharpest bulb.

24            Every representation in this patent, Your Honor,

25    is about this magic 70 to 90.  And it is not above 70, as he

1    referenced.  The words are actually approximately 70.  That

2    is a weasel word in patent law.  And that is why the whole

3    thing is replete with fraud.  And so it went right through

4    the Patent Office.

5           Yeah, sure it did, because they never told the

6    Patent Office about the prior machine.  And that is exactly

7    the problem with these, the cases that I cited, and they are

8    right on point, because it is the same thing where the

9    inventors, themselves, it's their own prior art that they

10   are working with, their own product that was on sale.  They

11   have a duty of candor.  They have to tell the Patent Office

12   what products are on sale.  And what the attributes of those

13   products are if they are trying to make, you know,

14   distinguishing features to advance it.  So, the whole, the

15   whole patent is replete with misrepresentations.  Every

16   major figure they cull it out.  So, let me just -- I want to

17   talk about the fraud.

18          Now, in the answer and counterclaim, they are

19   cherry-picking some of the statements that were made.  We

20   actually pled quite a bit about that porosity patent.  We

21   went through in great detail and we also alleged it was all

22   of the claims, because all of the claims were going to rise

23   or fall on their arguments over the prior art.

24          Let me get to 35.  And it is on page 37 of our

25   answer and counterclaim, Your Honor.  So, what happens is --

1     I'm sorry, it is 38.  He only cited part of the answer and

2     counterclaim.  See, during the prosecution, all claims, all

3     claims -- we have identified all claims were rejected by the

4     Examiner.  And the Examiner made specific, you know,

5     rejections over two pieces of prior art.

6          And he says the word porosity isn't mentioned

7     anywhere in the patent?  Paragraph 47 is their statement

8     about porosity.  And he completely ignored this this

9     morning.  And it says, "Neither CIMA I or CIMA II suggests

10    the adjustment of the rate of dispensation of the material

11    made to control the porosity of the article being formed."

12         They are the ones that interjected the word

13    porosity.  And the porosity word appears in the claims.

14    This is the applicant for the patent, okay?  And then we

15    cite the prior art.  And at paragraph 51, we give specific

16    statements as to why adjusting the rate of dispensing to

17    affect porosity was known.  And it was known because of

18    their own '329 Patent.  Okay?

19         Where they talk about varying, using

20    interchangeable orifices which changes -- it is kind of like

21    plumbing.  I am not a great plumber, but if you have a

22    bigger hose, you can put down -- a fire hose puts down a lot

23    more stuff than a garden hose.

24         And then they also talk about a variable-sized

25    orifice, which also changes the dispensing.  And then, after

1    we allege this, we came to learn that the very feature they

2    are suing us on -- I just want to with switch back to the

3    lectern PC.  So, in other words, a lot of this has been

4    cherry-picked in terms of the argument, but there is a lot

5    of great detail in the answer and counterclaim.

6              Now, I find this really interesting.  In the

7    Complaint, Your Honor, they allege that because this company

8    changes the fill settings -- this is exhibit -- this is

9    paragraph 26 of their Complaint.  They are saying that

10   because the fill settings are changed, that is how Afinia

11   infringes the patent, right?

12             Well, their own 1500 device in 1994, if you go

13   down to road width, and this is a little bit harder to see,

14   but you can see you can change the nozzle size, but you can

15   also change the road width.  It goes from .04 maximum, or

16   .001, for example, under the .010 nozzle.  Right?

17             THE COURT:  Right, I have got it.

18             MR. CASS:  So, they are able to change the road

19   width, the very feature they are suing Afinia for within

20   their 1994 machine.  And also, and that makes sense because

21   that patent I just showed you shows you can vary the tip

22   diameter, and they didn't disclose it.

23             So, here is another situation where you have an

24   overt misrepresentation by the Plaintiffs of the status of

25   the prior art, and why the patent should be granted, when

1       their own technology, both the patent that wasn't disclosed

2       and the 1500 machine that wasn't disclosed provided for

3       adjusting the rate of dispensation.

4              And I have bolded it at the bottom, but this is

5       alleged in our counterclaim, Your Honor, neither CIMA I nor

6       CIMA II suggests that the adjustment of the rate of

7       dispensation of material may be made to control the porosity

8       of the article being formed.  That is directly on point to

9       the withheld evidence.  The only reasonable inference from

10      this -- and we are entitled to a reasonable inference, I

11      believe, on this, and all facts are assumed to be true at

12      this stage; is that this was done to procure the patent.

13             Now, we asked for phase discovery, and they

14      rejected that.  We wanted to do some phased discovery.  We

15      didn't have a discussion.  But, I think that we have clearly

16      met the burden that is required of us on equitable conduct

17      for these two patents under those three cases I mentioned,

18      *Aventis*, *W.L. Gore* and *Cumberland*.

19             So, now I want to talk a little bit about the

20      patent misuse if Your Honor doesn't have any questions.

21             THE COURT:  All right.  And what -- I mean, it may

22      not even be a fair question.  What do you hope that the

23      discovery would show?  Obviously, in the brief you state

24      that there's -- you use the phrase, this is premature

25      because discovery will kind of reveal what we claim they are

1    concealing.

2              MR. CASS:  Right.  We also think that, you know,

3    we're very lucky.  We were able to get a 1994 and 1995

4    version of their prior machine.  I was in another one of

5    these and it took us several years.  People knew of it, we

6    couldn't locate it, but we already have it.

7              There are some other things going on, Your Honor.

8    One of the reasons why Your Honor is probably saying, well,

9    why is Mr. Cass alleging all of this monopoly business in

10   his claims?  And it kind of ties in a little bit to the

11   patent misuse, and this is how it does, Your Honor.  The

12   greater your market power -- and I have shown the Court some

13   evidence.  We have excellent evidence of market power

14   against Stratasys.

15             The greater your market power, the more scrutiny

16   the clawback provisions of a license are given.  And that's,

17   I believe, under the Department of Justice guidelines.  So,

18   the patent misuse, yes, we have absolute fraud in the '058

19   and the '925 Patent, right?  But, the licensing scheme, if

20   you look at the license -- and they have got all of these

21   licenses included, you know, under the terms of their

22   license.  They are requiring any customer to give them any

23   improvement patent on any of their patents, regardless of

24   what country they are in, wherever they buy a machine.  So,

25   they are expanding, first of all, the scope of their

1    intellectual property.

2            Because if you are in Istanbul and you bought a

3    Stratasys machine and now, you know, you invent something,

4    they don't have patents in Turkey, but they are going to

5    require a clawback provision to obtain all of those rights.

6    And that is another instance where I think to some extent

7    the counterclaim is a little bit cherry-picked.

8            Yes, there's allegations about monopoly and market

9    power and all of those other things, and I am entitled to

10   have additional facts in my counterclaims, because I want

11   them to admit or deny those.  But, those also weave into the

12   patent misuse theory.  Because, again, the greater -- this

13   is how GE got in trouble in the 1940's with patents because

14   they had such a market on the incandescent light.  So, the

15   greater your market power -- it is a factor to show it

16   violates the rule of reason, because of who you are and

17   where you sit.

18           And what the patent misuse counts say is you can't

19   impermissibly broaden the scope of your patent.  And that

20   can be by time, by jurisdiction, and by geography.  Which,

21   if you look at that license, I think it violates all three.

22           Now, it is an interesting defense, because if that

23   defense is proper and lodged, and lodged correctly, and I

24   submit that it is, because we've referenced the license, we

25   made allegations about how it enhances the scope of their

1      patents.  That defense prohibits them from getting any

2      damages until they stopped that licensing program.  So, it

3      is a valid defense.  And that is why these things still come

4      up.  And I will just cite some of the cases --

5              THE COURT:  So, what of their observation -- they

6      had it in their reply brief and a focus today about, well,

7      the defense has changed their theories.  One, it is not

8      pled.  Two, it is a different theory now than it was, so

9      maybe, perhaps, they have abandoned the other.

10             What is most important for me to know now about

11     that?

12             MR. CASS:  I think what is most important for you

13     to know is that under each count -- yes, I have additional

14     facts I want them to admit or deny; and that is true.  But,

15     the operative facts for the count, I didn't allege monopoly,

16     I haven't alleged monopoly, yet.  I haven't alleged

17     antitrust yet.  Those are paragraphs in there, but that is

18     not what is being alleged.

19             What is being alleged is patent misuse based on

20     two theories.  One is the inequitable conduct of the two

21     patents at issue, and the other one is that the asserted

22     patent is part of the license for part of the patent misuse.

23             And if you go to the cases that talk about patent

24     misuse, like windsurfing, you know, when you try to tie the

25     validity of a trademark with a patent, that is an example of

1    patent misuse.  *Atlanta Pharma*, where you are treating the

2    patent as if it is in force beyond the date of its

3    expiration, that is another example.

4          If you violate a reasonable and nondiscriminatory

5    license scheme where you are supposed to license out the

6    technology, that is another example of patent misuse.

7          If you make a misrepresentation over a standard,

8    you know, if you are in an industrial standard and you have

9    misrepresented the scope of your patents as participating in

10   that standard, that is another example of patent misuse.

11   So, patent misuse is still there.  The question for the

12   Court is -- and it is really a legal question because you

13   have the provision in front of Your Honor.  Your Honor can

14   see the provision from the contract.  It was attached to our

15   defense as Exhibit A.  Your Honor can look at that as a

16   matter of law and see if our interpretation, I suppose, is

17   legally plausible, and I believe it is.  And we have alleged

18   that in our counterclaim.

19         I think right after we alleged how much market

20   power they have, we get into the license and how the license

21   is invalidated.  It is roughly on page -- it bridges pages,

22   I will say, it bridges pages 9 through, roughly, Page 12 or

23   13 -- yeah, Page 12.  And then those counts, those

24   paragraphs are incorporated in the other affirmative

25   defenses.

1          But, what is being alleged is that the clawback

2     provision isn't limited in time.  It is a contract of

3     adhesion.  It purports to cover expired patents.  It is not

4     limited in geographic scope.  It purports to cover patent

5     rights for third parties; that it requires a customer of

6     Stratasys to share their invention with 50 percent of the

7     market, because that is their rough market power if you add

8     up what the industrial studies say and their recent

9     acquisitions.

10          So, from my point of view, that has been very,

11     very well pled.  There were specifics, but Your Honor can

12     look at paragraph 8.2 and make the call as to whether that

13     is legally plausible.  And we said why it isn't.  And that

14     is a defense.

15          As long as -- if I am correct that that is an

16     illegal provision and that they are using it and that they

17     have market power and that it violates the rule of reason --

18     because that is the test, on a clawback provision, is

19     whether it violates the rule of reason, given their market

20     power, then I have adequately pled it.

21          But, to kind of just sum up, here, because, you

22     know, I tried to read all of the cases before today and I

23     think I was up until 1:00 in the morning last night.  And

24     you read so many cases where a court allows it or a court

25     doesn't allow it on inequitable conduct.  And you start

1    scratching your head and say:  Well, what is enough and what

2    isn't enough?  And really, I think those three cases, when

3    you go back to -- this FDM machine didn't fall from Mars.

4    This was known to them.  This was their product.  And the

5    '058 Patent was all about this magic range.  And they knew

6    it.

7            And this is a difficult area of the law.  It

8    requires a lot of honesty and integrity both at the Patent

9    Office -- especially at the Patent Office.  And I think that

10   those cases, *Aventis*, *W.L. Gore* and *Cumberland Pharm.* are

11   all talking about the exact kind of behavior.

12           I find it almost unimaginable that in both of

13   these patents there was no disclosure of their own devices

14   and prior products.  They have a duty of candor.  They

15   signed that under oath.  And where you have an overt

16   misrepresentation of the prior art and the problem to be

17   solved, which is what both of these two patents had, and it

18   is your own, and you don't disclose it, that is where courts

19   have said, you are entitled to a reasonable inference that

20   that was done with intent to deceive to get the patent.

21           And here, you know, they said, well where did the

22   porosity thing come from?  This is specifically alleged in

23   the counterclaim in relationship to the Patent Office's

24   denial of all of the references.  So, we have to be careful

25   we don't cherry-pick one part of the counterclaim, because

1     this is what they said, and we referenced exactly what they

2     had in their possession with that '329 Patent that had the

3     variable nozzle that could -- and also, now we've learned of

4     the road width.

5            But, in any case, we have enough to even consider

6     a summary judgment motion, we believe.  So, I think that we

7     can get well beyond inequitable conduct at the pleading

8     stage, Your Honor.  So --

9            THE COURT:  All right?

10           MR. CASS:  Thank you very much.

11           THE COURT:  Thank you.  I may give you the last

12    word after rebuttal here before we are done.  Lawyers rarely

13    pass up the opportunity, but we will see.

14           MR. GRIMSRUD:  Thank you, Your Honor.

15           THE COURT:  I will give you a moment here to --

16           MR. CASS:  I'm sorry.

17           THE COURT:  I guess for lack of a better word,

18    obviously, the line has been drawn, I guess, in the sand or

19    down the courtroom.  You heard what counsel said.

20           MR. GRIMSRUD:  Yeah, I think, Your Honor, some

21    comments in rebuttal.  One, this is showing -- counsel's

22    argument showed the importance of identifying the claims and

23    claim limitations when you are trying to allege inequitable

24    conduct.  Much of the discussion on the -- I will start with

25    the '058 Patent, which is on the heating that he had talked

1    about.

2              And he talked about the specification a lot where

3    it says approximately 70 to 90 degrees it talks about.  The

4    claims are what you need to look at, not the specification.

5    The claims, you know, are what matter in the case.  And this

6    is the type of thing that is not mentioned in their pleading

7    is that Claim 1 of the '058 Patent says that the -- it is

8    dispensing a material having at least a local region

9    temperature that exceeds the solidification temperature --

10             THE COURT:  Can we slow it down just a little bit?

11             MR. GRIMSRUD:  Yes, sorry.

12             THE COURT:  I mean, we all have a tendency when we

13   are reading something to pick up the speed, but --

14             MR. GRIMSRUD:  Yes.

15             THE COURT:  -- for the benefit of my court

16   reporter, even though, at least, we have a reference here.

17   But, if you would please?  Thank you.

18             MR. GRIMSRUD:  Thank you, Your Honor, I apologize.

19   The patent in Claim 1, for example, says that the

20   temperature has to exceed the solidification temperature, so

21   it has to be above it.

22             And the FDM 1650 product that he was talking

23   about, he says went up to 70 degrees, which does not exceed

24   the solidification temperature.  You know, these potentially

25   could be claim construction issues, but they have not

1    explained how the FDM 1650 teaches something that exceeds

2    the solidification temperature of the thermally

3    solidifiable material.

4         Instead, what they have done is they have looked

5    at the specification, and they focused on statements in the

6    specification; but, the claims specifically say that it has

7    to exceed the temperature.  And the FDM 1650 that they have

8    been talking about says it goes up to 70 degrees, which

9    would not exceed the solidification temperature for the ABS

10   material.

11        THE COURT:  Well, and I don't think you are

12   implying, and perhaps neither party is; but, I will soon

13   find out.  Obviously, you said:  Well, you used the phrase

14   claim construction.  Obviously, if we were here at a *Markman*

15   hearing, then where we usually end up going is the

16   specification.

17        So, obviously, you are suggesting, well, we don't

18   really need to get to that, but here is what the claim says

19   versus the specification.  And I am not -- I think it is

20   highly unlikely, and maybe neither party is suggesting that.

21   I believe that I can make a ruling on the case without doing

22   any claim construction.  Because obviously if one of you

23   say:  Well, no you can't.  Of course, then we have the

24   Defense point of view.  And you heard me say this before.

25   And you are commenting on it now; and that is, well, same

1    inventors, same product, same prior art.  It is that "so

2    obvious" argument that it's -- I will use the phrase -- it

3    wasn't counsel's phrase, but it jumps off the page or the

4    pleading, it is so obvious that this was fraud; that they

5    didn't disclose this prior art.  I mean, that is really

6    where the two of you very dramatically part company and you

7    were just commenting on that.

8         MR. GRIMSRUD:  Yes, Your Honor, we don't think

9    claim construction is needed now.  Our only point is this is

10   an example of why it is important in your pleading to be

11   specific with inequitable conduct and say which claim you

12   are talking about and which claim limitation you are talking

13   about.

14        Because in our view the FDM 1650 is not at all

15   relevant, certainly not "but for" material, because the

16   claim says you have to exceed the solidification

17   temperature.

18        So, it really goes to the higher level point of in

19   order to plead inequitable conduct, you need to be specific.

20   You need to identify the claims, the claim limitations, and

21   explain where those limitations are met by the prior art.

22        And, you know, counsel talked about the '058

23   Patent, also discussing the '329 and other patents.  And

24   this is, I believe, from the specification of the '058

25   Patent, where it actually says that the patents that were

1    disclosed to the Patent Office teach a build environment

2    that is maintained at and below the solidification

3    temperature.

4         So, the inventors told the Patent Office that

5    there was other references that taught maintaining the

6    temperature at the solidification temperature, which is what

7    we -- but what the claims say is you exceed the

8    solidification temperature.  And they have not explained,

9    alleged, how the FDM 1650 exceeds the solidification

10   temperature.  So, they have not explained at all in their

11   pleading how the FDM 1650 is not just cumulative of other

12   references that were given to the Patent Office.  So, this

13   is another example of the lack of specificity resulting in

14   dismissal under 12(b)(6).

15        The '925 Patent is -- there are similar issues on

16   their materiality allegations that they talk -- this is the

17   porosity patent.  And counsel talked about controlling the

18   porosity.  The claims say "predetermined porosity."  It is

19   about an invention that you are able to establish this

20   predetermined porosity.

21        And the '329 Patent, which I don't know if I

22   misheard counsel or not, but he was suggesting that -- I

23   believe that counsel had this slide up or a slide showing

24   this information and said that the inventors did talk about

25   porosity with the Patent Office in prosecuting the '925

1    Patent.

2              What we were saying was that the '329 Patent,

3    which was -- which is the one that they are basing their

4    inequitable conduct charge on, that patent, the '329 Patent,

5    doesn't mention porosity.  Whereas prior art that was given

6    to the Patent Office does mention porosity.  And they have

7    not explained how the '329 Patent could possibly be a "but

8    for" material reference when it doesn't even mention

9    porosity.  And the references that were given to the Patent

10   Office discuss porosity.

11             And in fact, this is another one of counsel's

12   slides.  Their argument is that the '329 Patent, while it

13   doesn't maybe mention porosity, it is about controlling

14   porosity.  That is what they say -- or that it would allow

15   you to control porosity; that is in Afinia's argument.

16             Well, this again, as they show in their slide

17   here, this is a section from the prosecution history of the

18   '925 Patent where the applicants told the Patent Office that

19   this prior art that was given to the Patent Office simply

20   states that porosity can be controlled.

21             So, there was no mystery that porosity can be

22   controlled.  The patents told the Patent Office that.  And

23   they have not identified how, in their pleading, how the

24   '329 Patent discloses anything more with respect to

25   porosity.  And in fact, it doesn't even mention porosity.

1   So, it would seem actually much less relevant than CIMA

2   references.

3         You know, the same with -- we didn't hear much

4   about allegations for who specifically knew of the material

5   information and factual allegations about intent to deceive,

6   which I won't get into again, but in our view they have not

7   alleged any facts about a certain person attempting to

8   deceive the Patent Office.

9         Back to the Court's comments about case management

10  at the beginning of the day?  One suggestion we would

11  propose is that one option would be, since a lot of this is

12  now starting to delve into claim construction and things

13  like that is if we could put a deadline after claim

14  construction for seeking leave to amend the pleadings, so

15  after discovery, after claims had been construed, there

16  would be a deadline to amend the pleadings with respect to

17  inequitable conduct.  That would be one option, to try to

18  have a structure in place with specific deadlines.

19        THE COURT:  Well, and of course, I want to be

20  sensitive to the concerns of both parties.  One of the --

21  one of the criticisms of -- and somewhat legitimate ones

22  these days in Federal Courts, although it comes more in the

23  context of e-discovery.  But, they are saying, well,

24  aggressive but fair case management early on in the case

25  helps control the scope of discovery.  But, you are

1    suggesting that however it comes out, that that may not be

2    the paramount issue from your client's point of view.  So

3    that, hence, one way to do that is if that amendment date

4    would be -- we will see what defense counsel says shortly

5    after any *Markman* hearing and claim construction order.

6    Then that would be -- it would be hard for the defense to

7    argue that, one, it would be apparent what the record is,

8    although the defense is saying it is apparent now.  And two,

9    then the record would be what it was.  And then we would

10   know once and for all, from your point of view, well, we

11   said before and we will say it again:  There is no record of

12   inequitable conduct, and also relating to some of the

13   affirmative defense issues.

14          MR. GRIMSRUD:  Exactly, Your Honor.  Everybody

15   would know the scope of the claims.  And everybody would

16   have presumably taken the discovery they wanted to take and

17   that would be a sensible deadline, in our view.

18          THE COURT:  All right.  What I will probably do,

19   absent some agreement of the parties, just to be fair to

20   both parties, I will rule on what's in front of me, but then

21   I am not saying you have to retreat back once my decision is

22   made, regardless of what it is, I am not suggesting then

23   because it has come up today, even if a short -- once you

24   get my decision, if one or both parties would say:  Well,

25   can we have a five minute on or off the record status

1    conference with the Judge?  Because, let's nudge or let's

2    bump the -- let's move this amendment date.

3           I'll just make sure I deal with this.  Obviously,

4    I acknowledge that with or without your agreement, that is

5    one thing I could do.  And have some attorneys done it with

6    or without agreement, or courts in the past?  Yes.  It can

7    be very fact specific to a particular case, because as you

8    all know, one size rarely fits all.  All right?

9           MR. GRIMSRUD:  Okay.  And Your Honor, I will close

10   out on the patent misuse.

11          THE COURT:  All right.

12          MR. GRIMSRUD:  Their theory that is pleaded in

13   their defenses is based on assertion of the patents.  And

14   that, in our view, is clearly and legally foreclosed.  And

15   they have not alleged patent misuse based on this licensing

16   theory, which I won't get back into all of the details; but

17   again, we believe it is just a speculative and unreasonable

18   reading of this license agreement and doesn't have support

19   in the case law.

20          And I wanted to also mention, Your Honor, on the

21   case management issues, we did actually discuss -- my

22   colleague pointed out, Mr. Liebman pointed out that we did

23   discuss at the scheduling conference on the patent misuse

24   issue for discovery --

25          THE COURT:  All right.

1        MR. GRIMSRUD:  That, you know, we reserve our

2    right to limit discovery if we thought the discovery was

3    going too far into patent misuse, market-type things.  So,

4    we did reserve that right to the extent we thought the

5    discovery was excessive --

6        THE COURT:  And in fairness to both parties, even

7    if we weren't here today, that is the whole purpose of some,

8    you know, early on and -- but even-handed case management.

9    Obviously, if hadn't been discussed, frankly speaking, I

10   don't think either side would be very successful in

11   convincing a Judge that, well, since it wasn't discussed, it

12   is waived.  I mean the "W" word, waiver, is a pretty hard

13   one to convince some -- if it is a case management issue.

14   So, that makes -- I understand that.  So, all right?

15       MR. GRIMSRUD:  All right.  Thank you, Your Honor.

16   We'd ask that the counterclaims be dismissed and the

17   affirmative defenses stricken.

18       THE COURT:  Would you like the final word,

19   Counsel?

20       MR. CASS:  I would, Your Honor.

21       THE COURT:  I thought you might.

22       MR. CASS:  I just wanted to point out two things,

23   because this is the pleading, itself.  It wasn't -- he just

24   mentioned it was -- they disclosed that they could control

25   porosity.  That is not what the statement was.

1            It was, neither suggests the adjustment of the

2       rate of dispensation of material.  Neither show changing the

3       rate of dispensation as the actual statement.  It wasn't

4       controlling porosity, because that was conceded, it was

5       adjusting the rate.  And that is in our pleading.

6            And then if you flip -- we talked about that prior

7       art.  And then if you flip a few pages, we state in

8       paragraph 51, at all times relevant to the disclosed varying

9       the rate of dispensation, which is because, and we emphasize

10      this for the Court, it can change the orifice tip, they can

11      change -- they can vary the orifice.  So, I just wanted to

12      make clear that Your Honor understood that we actually pled

13      the very distinct reason.  That is why it was a

14      misrepresentation.

15           And then also on the '058 Patent I wanted to just

16      point out that he then -- he referenced the claim, and he

17      referenced -- he said, oh, that doesn't talk about above.

18           The very provision that we cited in paragraph 63,

19      this talks about the difference between solidification and

20      creep relaxation.  Creep relaxation temperature is something

21      that only an engineer could come up with.  But, it has to do

22      with how the element is sort of like cooled in this range

23      of, range of heating, so that there is better material

24      properties within it, and I am oversimplifying it.

25           But what is important here is they say in the

1    patent that the solidification and its creep relaxation

2    temperature, you know, they say maintain it at a temperature

3    that is preferably in a range between the solidification

4    temperature and its creep relaxation temperature, and then

5    they give the actual example.

6         "Preferably, it should be maintained closer to the

7    creep relaxation temperature.  In the case of *ABS Plastics*,

8    temperature window falls between 70 and 90."  So, it is

9    right in the pleadings and it is exactly what they said and

10   it was exact misrepresentation, because they had already

11   been maintaining it at 70 degrees Celsius.

12        I just wanted to point that out because when a

13   counterclaim gets cherry-picked paragraph by paragraph,

14   sometimes you lose track of what was actually alleged, and

15   we alleged specifically what it was that they said, which

16   was an overt representation, and that goes back to the three

17   cases.  I won't bore you by mentioning those cases again,

18   Your Honor.  So --

19        THE COURT:  Thank you.  I didn't see you leaping

20   out of your chair, Mr. Grimsrud, but is there anything else

21   you would like to --

22        MR. GRIMSRUD:  Nothing further, Your Honor.

23        THE COURT:  I will turn on -- back off the mood

24   lighting here, so to speak.

25        I will thank you each for your arguments.  I will

1     deem it submitted.  I will have a memorandum and opinion out

2     to you in no more than 60 days, and hopefully it will be

3     less.  I am assuming unless that creates -- depending on

4     what you have scheduled with the management order in place,

5     that if there is -- if one or both of you are now thinking:

6     Well, the Judge doesn't know it, but here is what is going

7     to become an issue right away, then I suppose I should know

8     that now.

9              MR. CASS:  The only thing I would mention, Your

10    Honor, Afinia is a very small company, and we are in the

11    process of trying to do electronic discovery.  We think to

12    do it right, is to do it once, because they are so small.

13    And that is just one issue.  And, you know, it would be

14    helpful for us, I think, to get all of these issues

15    resolved.

16             We have engaged an expert.  I think we would be

17    ready, I think, to file some summary judgment motions on

18    some of this stuff fairly quickly.  So, my preference is to

19    try to do -- you know, the poison in these cases is often

20    just the discovery expense.

21             THE COURT:  That is true.  Well, do you think

22    there is a -- I will ask Plaintiff's counsel, too.  Do you

23    think that given the time frame now that there's -- you

24    could probably agree on something that seems fair to both

25    parties?  Or are you saying:  No, we can see right now we

1     are headed into a disagreement on that until we get your

2     decision?  What's --

3                MR. LIEBMAN:  Your Honor, the state we are at

4     right now is that there is a wave of written discovery and

5     interrogatories out and neither party has responded.  The

6     first discussion on electronic discovery I think will be

7     next time.  So, right now we are at the beginning of the

8     discovery phase.

9                What makes sense in this case, as I think in most

10    other cases, is we do the claim construction for all four

11    patents.  Moving ahead on two of the patents makes no sense.

12    We still have the other two patents.

13               So, we ought to do this discovery, take up the

14    discovery disputes with the Magistrate, and they will get

15    all of the inequitable conduct discovery they want

16    irrespective of the ruling, and do the claim construction.

17    And then if they want to keep this in the case, they can

18    seek leave to amend if it's Your Honor's position.

19               I don't think any special procedures are called

20    for here.  This is no different than anything else.  And one

21    comment about their being a small company?  We are hoping

22    that they are not trying to do asymmetric discovery, saying

23    they don't -- that Stratasys has to spend millions of

24    dollars responding on discovery, meanwhile they will try to

25    use the small company status as a shield.  We think that the

1    parties should try to get together and try to limit

2    discovery to the issues.  And inequitable conduct, we are

3    going to give them the discovery they want.  There is no

4    issue here.

5              THE COURT:  Well, why don't we do this?  Why don't

6    you, if you get to the point in the -- whether it is in the

7    next few days or next couple of weeks where you say:  Well,

8    we now think, with or without the Judge or Magistrate

9    Judge's involvement, this isn't what was contemplated.  And

10   here is how the discovery would be affected by getting the

11   Judge's decision earlier, rather than later.  We don't want

12   to be duplicitous or something else.  Then I assume with the

13   permission or notice of the other party, we will pick up the

14   phone, and I will make sure the Magistrate Judge knows:

15   Well, they are going to meet and confer.  And I predict this

16   will get resolved in such a way that -- because the irony

17   is, usually it is coming from the other side on a motion

18   like this, saying:  Well, here is the discovery we shouldn't

19   have to give unless we lose on this motion, whether

20   inequitable conduct -- but, if there is some concern about

21   that, I assume somebody will pick up the phone.  And one of

22   us, without dragging everybody back to court, one of us will

23   take care of it.  But, I will let Magistrate Judge Graham

24   know, too, that we may or may not get that call.

25             MR. LIEBMAN:  Right.  Let me just clarify what I

1    said.

2              THE COURT:  All right.

3              MR. LIEBMAN:  I don't think we are going to have

4    any discovery disputes regarding inequitable conduct.  We'll

5    give them all of that discovery.

6              On the other hand, the misuse defense, to the

7    extent it asserts market type issues and they seek broad

8    discovery, that is where I can see there being discovery

9    disputes.

10             THE COURT:  All right.  Why don't you see, if that

11   is the case, we will -- because sometimes I think it's --

12   well, I don't think, I know it is unfair to parties whether

13   it is this context or something else to say:  Don't bother

14   us, work it out.  That is why we are here.  If you can't

15   work something out, then that is our responsibility to give

16   you immediate access to us and make a decision.

17             So, if there becomes an issue there on scope,

18   whether it is the misuse issue or another one, you will have

19   access to one or both of us, and there won't be some fancy

20   or delayed motion practice.  We will make the call on it.

21             MR. CASS:  I don't anticipate going on a fishing

22   expedition.  It is an unusual situation.  I think Your Honor

23   has seen me -- we've actually referenced the industrial

24   support we have of very solid evidence of their market

25   power.  And usually that is what those fishing expeditions

```
 1    are out trying to get.  So, I think there is some concern, I

 2    think, on my client that they have contacted all but the

 3    Plaintiff on that.  You know, we will get that in the normal

 4    course of the --

 5              THE COURT:  Well, so, if there is an issue,

 6    whether it is that or something else, give us a ring and one

 7    of us will give you immediate access to us.

 8              MR. LIEBMAN:  Thank you, Your Honor.

 9              MR. CASS:  Thank you, Your Honor.

10              THE COURT:  Thank you all.  Have a nice weekend.

11    We are adjourned.

12              And for the folks here for the Franklin matter, as

13    long as it takes to have counsel pack up and go and you come

14    up to counsel table, we'll move right into it shortly.  So,

15    we will stand in recess for the next couple of minutes.

16    Thank you.

17              (Adjournment.)

18

19                          *     *     *

20              I, Jeanne M. Anderson, certify that the foregoing

21    is a correct transcript from the record of proceedings in

22    the above-entitled matter.

23

24              Certified by:   s/ Jeanne M. Anderson
                                Jeanne M. Anderson, RMR-RPR
25                              Official Court Reporter
```